Strafford
No. 85-146

THE EMPIRE INSURANCE COMPANIES

v.

NATIONAL UNION FIRE INSURANCE COMPANY & a.

June 5, 1986

*Ransmeier & Spellman*, of Concord (*Steven E. Hengen* and *Diane L. Perin* on the brief, and *Mr. Hengen* orally), for the Empire Insurance Companies.

*Hermann & Harkinson*, of Manchester (*Robert L. Hermann, Jr.,* on the brief and orally), for the National Union Fire Insurance Company.

SOUTER, J. This is an appeal and cross-appeal from a declaratory judgment under RSA 491:22, determining coverage under a liability policy issued to a carnival operator in order to satisfy the operator's statutory obligation to obtain minimum liability coverage. RSA 321-A:5, III. The policy issued by the plaintiff excludes coverage if its named insured (1) operates a carnival attraction as an independent contractor in association with another carnival or amusement park owner or operator, and (2) is an insured under a separate "legal liability policy" issued to that other owner or operator. The Superior Court (*Temple*, J.) found that the exclusion was applicable on the

facts of the case and concluded that its enforcement would not defeat the minimum coverage requirement. The court nonetheless ruled that the exclusion was void, because its application in other circumstances could result in coverage below the minimum. We affirm the finding that the exclusion applies, but reverse the ruling that it is void.

The Rochester Agricultural and Mechanical Association granted the defendant Coleman Brothers' Shows, Inc. an exclusive concession to operate rides and shows in the midway of the 1981 Rochester Fair. Under this agreement, Coleman operated certain amusement devices itself, but it also rented midway space to the defendant Marc's Amusements, Inc., which owned and operated a ride called the "yo-yo-can."

It is undisputed that Marc's was thus "an operator of carnival equipment or an amusement device" within the meaning of RSA 321-A:5, III, and was consequently obligated under that statute to obtain liability coverage "in a minimum amount of $300,000 per person and $1,000,000 aggregate." The plaintiff, The Empire Insurance Companies, issued such a policy to Marc's, but subject to this exclusion:

> "[t]his insurance does not apply:
>
> (a) If an occurrence takes place while the named insured is operating a carnival attraction as an independent contractor in association with a carnival, circus or amusement park owner or operator and if such carnival, circus or amusement park owner or operator has provided a legal liability policy with bodily injury coverage under the terms of which the named insured under this insurance is an insured under such other policy with respect to such occurrence."

Coleman obtained its own liability coverage from the defendant National Union Fire Insurance Company, which issued a policy describing Coleman as a "carnival operator," and which included "owners of any booked rides, carnival attractions or leased attractions" as additional insureds. All parties agree that Marc's was thus an additional insured under the National Union policy.

Each policy was in force on September 27, 1981, when Sherry Long was allegedly injured while riding on Marc's yo-yo-can. After Long brought a personal injury action against Marc's and Coleman, Empire brought this petition, seeking a declaratory judgment that the quoted policy exclusion relieved it of any obligation to defend and indemnify Marc's. The parties litigated two issues, whether Coleman was a "carnival . . . operator" within the meaning of the

exclusion, and whether the exclusion is enforceable. National Union appeals from the trial court's finding that Coleman was such an operator, and Empire appeals the court's ruling that the exclusion is void.

By its terms the exclusion applies only if Marc's was insured under another policy issued to a "carnival . . . operator." Surprisingly, given the facts of the case, National Union argues that Coleman was not a carnival operator at the time in question, because Coleman's carnival midway "operation . . . was an integral part of a 'Fair' . . . 'consisting of displays of farm and home products, and various competitions and entertainments[.]' American Heritage Dictionary 471 (1975)."

National Union's argument assumes that a carnival loses its identity in the context of a fair. While there are those who might wish this were so, it is not. Nor is there any reason to believe that the parties to Empire's insurance contract intended "carnival" to describe something different from the midway at a typical fair. Therefore, applying the policy language as a reasonable person would construe it, *see Spaulding v. Concord Gen. Mut. Ins. Co.*, 122 N.H. 515, 516, 446 A.2d 1172, 1173 (1982), Coleman was obviously the operator of a carnival at the time in question, albeit a carnival that formed the midway of a county fair, and the trial court was therefore correct. The court's conclusion could not, in any event, have come as much of a surprise to National Union, which had described Coleman as a "carnival operator" for purposes of its own policy.

There is a more serious question, however, about the enforceability of Empire's exclusion. As we have seen, it would apply when the other "legal liability policy" is obtained by a "carnival . . . or amusement park owner or operator." When, as in this case, the "carnival . . . or amusement park owner or operator" is himself "an operator of carnival equipment or an amusement device" within the meaning of RSA 321-A:5, III, that statute will effectively require the other insurance policy to provide the minimum liability coverage of "$300,000 per person and $1,000,000 aggregate." RSA 321-A:5, III. Hence, an exclusion shifting coverage from one such policy to the other will not defeat the statutory mandate.

If, however, the "carnival . . . or amusement park owner or operator" is not "an operator of carnival equipment or an amusement device" within the meaning of the statute, he has no statutory obligation under RSA 321-A:5, III to obtain any minimum coverage. Yet, if he were to obtain a "legal liability policy" with less than the minimum coverage mandated by the statute, it appears that the Empire exclusion would nonetheless apply. The result would be less

coverage to the equipment operator than the statutory minimum, to the detriment of the operator and any injured patron. This possibility led the trial court to strike down the exclusion as void under the rule that "[p]olicy provisions designed to reduce the coverage to less than that prescribed by the express or implied provisions of [a] statute are void." *Merchants Mut. Ins. Group v. Orthopedic Prof. Ass'n,* 124 N.H. 648, 653, 480 A.2d 840, 842 (1984) (quoting *Soule v. Stuyvesant Ins. Co.,* 116 N.H. 595, 596, 364 A.2d 883, 884 (1976)).

Although Empire would not have any basis to quarrel with the trial court's ruling if its exclusion operated in this case actually to reduce coverage below the statutory minimum, the exclusion has no such actual effect. Coleman is an operator of carnival equipment, and, under National Union's policy issued to Coleman, Marc's will be covered up to $300,000 for any liability to Sherry Long. Empire therefore argues that the exclusion should be enforced, and for the following reasons we agree.

 Although this court has previously stated that policy provisions are void if they are "designed" to reduce coverage below a level mandated by statute, *Merchants Mut. supra,* the holdings of recent cases have not equaled the breadth of that statement. In actual practice we have declared exclusions to be void only when their application would actually have violated a statutory requirement or have defeated a statutory policy. *See, e.g., Merchants Mut., supra* at 648, 480 A.2d at 840 (application of physical contact requirement would defeat legislative policy of providing eligibility for uninsured motorist coverage equivalent to policy holder's liability coverage; reduction of uninsured motorist coverage by amount of worker's compensation payment would likewise defeat statutory eligibility, in case where there is no lien for worker's compensation benefits); *Bertolami v. Merchants Mutual Ins. Co.,* 120 N.H. 308, 414 A.2d 1281 (1980) (reduction of uninsured motorist coverage by amount of benefits under medical payments clause would defeat legislative policy that uninsured motorist coverage should operate like policyholder's liability coverage); *Merchants Mut. Ins. Co. v. Bean,* 119 N.H. 561, 406 A.2d 457 (1979) (exclusion for injury caused by co-employee would reduce coverage below statutory minimum required by Financial Responsibility Act). Thus our cases have turned on the actual operation of exclusionary clauses, not upon their potential in circumstances not before the court. The practice of the court was therefore accurately described by the statement in the *Bean* case that "[e]xclusionary language in the policy cannot operate to defeat or avoid coverage up to the minimum limits of liability" required by statute. *Id.* at 564, 406 A.2d at 458.

We adhere to the rule as thus stated, because it reconciles our obligation to enforce statutory mandates with our obligation to enforce the agreements of contracting parties. "Absent statutory provisions or public policy to the contrary, insurers have a right to limit their liability by exclusions written in terms appropriate to convey their meaning and effect to a reasonable person in the position of the insured." *Charest v. Union Mut. Ins. Co.*, 113 N.H. 683, 686, 313 A.2d 407, 409 (1973).

Accordingly, we hold that the possibility of conflict between a statutory requirement and a policy exclusion is insufficient to render the latter void. The force of legislative policy renders a policy exclusion void only when the exclusion actually conflicts with a statutory mandate.

*Affirmed in part; reversed in part.*

All concurred.