Hillsborough-northern judicial district
No. 95-589

BIANCO PROFESSIONAL ASSOCIATION & a.

v.

THE HOME INSURANCE COMPANY

November 5, 1999

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Doreen F. Connor* on the brief, and *Mr. Rehnborg* orally), for the plaintiffs.

*Nelson, Kinder, Mosseau & Gordon, P.C.*, of Manchester (*Robert M. Daniszewski* on the brief), and *Cetrulo & Capone*, of Boston, Massachusetts (*David A. Grossbaum* on the brief and orally), for the defendant.

PER CURIAM. The defendant, The Home Insurance Company (Home), appeals a ruling of the Superior Court (*Conboy*, J.) granting a petition for declaratory judgment in favor of the plaintiffs, Bianco Professional Association (Bianco P.A.), James J. Bianco, Jr., Michael J. Farley, and Eric G. Falkenham. The court found coverage under two claims-made professional liability policies issued by Home. We affirm in part and reverse in part.

The trial court found the following facts. On June 11, 1988, Lester Martin suffered personal injuries at Contoocook Campgrounds. On June 17, after meeting with Falkenham, who was an attorney with Bianco P.A., Lester and Theresa Martin retained Bianco P.A. to represent them in their claim against Contoocook Campgrounds, Inc. (Campgrounds). Falkenham worked on the Martins' case until August 1989 when he transferred the matter to Farley, who also worked for Bianco P.A. On June 17, 1991, six days after the statute of limitations had lapsed, Farley discovered that the Martins' writ had not yet been filed; it was subsequently delivered to the sheriff. In December 1991, the Campgrounds filed a pleading in superior court raising the statute of limitations as a defense.

On March 1, 1992, Bianco P.A. renewed its claims-made professional liability policy with Home, and on March 9, 1992, Farley left Bianco P.A. On June 29, 1992, the Campgrounds filed a motion to dismiss the Martins' case, which the trial court granted on November 23, 1992. By December 1992, the Martins had discharged Bianco P.A. and its attorneys and retained the law firm of Devine & Nyquist to appeal the dismissal of the Campgrounds suit and to represent them in a possible malpractice suit against Bianco P.A. Falkenham left Bianco P.A. on January 29, 1993, to work for the law firm of Devine, Millimet & Branch. On February 3, 1993, knowing that the trial court had dismissed the Martins' suit and that Falkenham had communicated with the Martins and their new attorneys about the missed statute of limitations, Bianco applied to renew the Bianco P.A. policy with Home for an additional year of coverage beginning March 1, 1993. By that time, both Farley and Falkenham had left the firm. Bianco completed the renewal application, listing the firm's attorneys to be covered under the new policy, but not disclosing the Martin incident.

On March 24, 1993, an attorney from Devine & Nyquist wrote a demand letter to Bianco identifying a potential malpractice claim against Farley and Bianco P.A. Two days later, Bianco informed Home of the Martins' potential claim.

We affirmed the dismissal of the Martins' case by the superior court. *See Martin v. Contoocook Campgrounds, Inc.*, No. 92-768

(N.H. November 5, 1993). The Martins filed a malpractice suit against Bianco P.A., Bianco, Farley, and Falkenham in May 1994. On May 27, the attorney representing Bianco P.A., Bianco, Falkenham, and Farley in the Martins' malpractice suit notified Home of the suit. On May 31, Devine, Millimet & Branch also notified Home under its policy of the claim against Falkenham. The plaintiffs subsequently filed a petition for declaratory judgment in superior court seeking coverage under their professional malpractice insurance policies.

The trial court ruled that Home is obligated to provide a defense and extend coverage for all of the plaintiffs regarding the Martins' malpractice claim under the 1993-1994 Bianco P.A. policy, and to provide excess coverage to Falkenham under the Devine, Millimet & Branch policy. Home appealed. We issued an opinion dated April 13, 1999. The plaintiffs moved for reconsideration. We granted the motion in part, see SUP. CT. R. 22, and withdrew our April 13 opinion.

On appeal, Home argues that: (1) Bianco and Falkenham had a duty to notify Home of a potential claim in 1992 because they had a reasonable expectation that a malpractice claim would be asserted against them personally; (2) Bianco and Falkenham were required to give notice of the Martins' potential claim against Bianco P.A. and Farley during the 1992-1993 policy year; (3) because Farley and Bianco P.A. breached their duty to report the Martins' potential claim, Home was not required to show prejudice from the late notices before denying coverage; and (4) the failure of Bianco to disclose the Martins' potential claim on the Bianco P.A. renewal application constituted a material misrepresentation that voided the policy.

First, we address Home's argument that Bianco and Falkenham had a duty in 1992 to notify Home that the Martins might bring a claim against them individually. The trial court found that neither Bianco nor Falkenham were aware or should have become aware that the missed statute of limitations would reasonably be expected to be the basis of a claim or suit against them individually until the actual claim was made.

The Home policy during the 1992-1993 year limited coverage to "any claim or claims first made against the Insured and reported to the Company during the policy period." It provides, in relevant part, that a claim is first made if

> during the policy period . . . the Insured shall have the
> knowledge or become aware of any act or omission which

> could reasonably be expected to give rise to a claim under this Policy and shall during the policy period . . . give written notice thereof to the Company in accordance with Condition VII.

Condition VII requires the insured to give written notice "as soon as practicable" after the insured becomes "aware of any act or omission which would reasonably be expected to be the basis of a claim or suit."

■ The interpretation of an insurance policy is a question of law for this court to decide. *Weeks v. St. Paul Fire & Marine Ins. Co.*, 140 N.H. 641, 643, 673 A.2d 772, 774 (1996). "We take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41, 648 A.2d 474, 476 (1994).

■ Because the Home policy does not define the phrase, "reasonably be expected," we look to New Hampshire law for guidance. We addressed the meaning of this phrase in *Shaheen, Cappiello, Stein & Gordon, P.A. v. Home Insurance Co.*, 143 N.H. 35, 719 A.2d 562 (1998), which concerned professional liability insurance policy provisions nearly identical to those in this case. Following *Shaheen's* guidance, we hold that the inquiry is what a reasonable attorney would have done under similar circumstances. *See id.* at 39, 719 A.2d at 565. If an attorney in good faith would not reasonably believe that liability would result from an incident, act, or omission, notice is timely if given promptly after the attorney receives notice that a claim will in fact be made. *See id.* "Whether the insured acted reasonably in providing notice of a potential claim is a question of fact for the trial court." *Id.* at 40, 719 A.2d at 566. In this case, where the trial court had an opportunity to observe the demeanor and credibility of witnesses, we will uphold its findings unless they "are unsupported by the evidence or are erroneous as a matter of law." *Hawthorne Trust v. Maine Savings Bank*, 136 N.H. 533, 536, 618 A.2d 828, 830 (1992) (quotation omitted).

We consider each attorney in turn. The trial court found that Bianco never actively controlled or supervised the handling of the Martins' file. There was testimony that neither he nor Farley expected him to supervise Farley's work and that the Martins' case was a "run of the mill case" that required no special guidance from another attorney.

Contrary to Home's argument, the fact that Bianco was the sole shareholder of the firm and had ultimate supervisory authority over the firm's cases does not make him vicariously liable as a matter of law for the tortious conduct of other firm employees. Except as otherwise provided by law, the personal liability of a shareholder of a professional corporation is no greater than that of a shareholder of a business corporation. *See* RSA 294-A:17, IV (1987). Generally, a corporate shareholder is personally liable only for his own acts. *See* RSA 293-A:6.22(b) (Supp. 1998) (recodifying and amending RSA 293-A:25, I (1987)). Home cites no legal authority to support its argument that vicarious liability attendant in a partnership attaches among members of a corporation. Therefore, we need not address Home's argument.

■ An employee of a professional corporation is not liable for other employees' conduct "unless he is at fault in appointing, supervising, or cooperating with them." RSA 294-A:17, II (1987). Home does not allege that Bianco was at fault in appointing, supervising, or cooperating with Farley; it contends that Bianco is liable by virtue of his appointment and nominal supervision of Farley. Home's argument fails, however, because under RSA 294-A:17, II liability is contingent on fault. Further, while Home is correct that practicing law in a professional corporation does not alter Bianco's responsibilities as an attorney, *see Petition of N.H. Bar Ass'n*, 110 N.H. 356, 357, 266 A.2d 853, 854 (1970), Bianco's personal liability as a member of a professional association is a matter separate from his culpability as an attorney under the rules of professional conduct, *see id.* We express no opinion as to the latter.

Similarly, we are not persuaded that Falkenham reasonably should have expected his conduct to be the basis of a suit or claim, even assuming that he signed the retainer contract with the Martins, worked on their case for a year prior to Farley's assignment to it, and apparently never formally withdrew from the case. Again, RSA 294-A:17 is controlling. It provides that "[e]very individual who renders professional services as an employee of a professional corporation shall be liable for any negligent or wrongful act or omission in which *he personally participates . . . .*" RSA 294-A:17, II (emphasis added). The trial court found that upon Farley's assignment to the Martins' file, with the exception of approximately ten minutes in September 1990, Falkenham had no involvement with the case until after the statute of limitations had expired. The record shows that while Falkenham initially handled

the Martin matter, he transferred it to Farley well before the statute of limitations became an issue, ceasing any meaningful involvement in the case.

■ The question is not whether we would have found differently but "could a reasonable person have reached the same decision as the trial court based on the evidence before it." *Hawthorne Trust*, 136 N.H. at 536, 618 A.2d at 830 (quotation omitted). Under the circumstances here, we cannot say that the trial court erred as a matter of law in ruling that during the 1992-1993 policy year, neither Bianco nor Falkenham should have reasonably expected personal liability in a case in which both had had only peripheral involvement during Farley's representation.

We next address Home's argument that it is entitled to deny coverage to Bianco and Falkenham because they failed to give notice of the Martins' potential claim against Bianco P.A. and Farley during the 1992-1993 policy year. It argues that the trial court erred in determining that under the policy, the obligation to give notice of a potential claim ran only to the individual against whom the claim might be asserted. We disagree.

The first paragraph of the notice provision provides that: "Upon the Insured becoming aware of any act or omission which would reasonably be expected to be the basis of a claim or suit . . . written notice shall be given by or on behalf of the Insured . . . ." The second paragraph then provides that

> [i]f during the policy period . . . [Home] shall be given notice of any act or omission which could reasonably be expected to give rise to a claim or suit against *the Insured* under this Policy, any claim which subsequently arises out of such act or omission shall be considered to be claim reported during the policy year . . . in which the written notice was received.

(Emphasis added.)

■ "The Insured" in the second paragraph plainly refers to the insured against whom a claim is asserted. The question is whether "the Insured" in the first paragraph also refers to the specific insured being sued or to any insured under the policy. It is reasonable to assume that while "the Insured" in certain policy provisions may refer to different persons from "an Insured" in other provisions, *cf. Pawtucket Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 468, 190 A.2d 420, 422 (1963), it refers to the same persons as "the Insured" in other provisions unless defined otherwise, *see*

*Dupont v. Chagnon*, 119 N.H. 792, 794, 408 A.2d 408, 409 (1979). In this case, because a reasonable reading of the notice provisions could give rise to different interpretations, we find the term "the Insured" ambiguous. *See Whitcomb v. Peerless Ins. Co.*, 141 N.H. 149, 151, 679 A.2d 575, 577 (1996). Construing the ambiguity in favor of coverage, *see Weaver v. Royal Ins. Co. of America*, 140 N.H. 780, 781-82, 674 A.2d 975, 977 (1996), we construe "the Insured" in both paragraphs to refer to the same person. Since we construe "the Insured" in the second paragraph to be one against whom a claim is asserted, "the Insured" in the first paragraph is also one against whom a claim is asserted. We therefore conclude that Bianco and Falkenham had no duty to report the Martins' potential claim against Bianco P.A. and Farley in order to be entitled to personal coverage.

Home's assertion that the trial court's interpretation allows an insured to conceal potential claims against other insureds while still claiming personal coverage may be a reason for an insurer to clarify ambiguous language in its policy. It does not persuade us that the policy in this case reflects Home's interpretation. *Cf. Pawtucket*, 104 N.H. at 468, 190 A.2d at 423 (absent clear policy language, contrary interpretation of "the Insured" denying coverage should not be adopted); *Calabraro v. Metropolitan Prop. & Cas. Ins. Co.*, 142 N.H. 308, 310, 702 A.2d 310, 312 (1997) (we construe policy ambiguities in favor of insured).

Third, Home contends that it was not required to show prejudice resulting from Farley's and Bianco P.A.'s late notice of the Martins' claim in order to deny coverage after the 1992-1993 policy had expired.

The trial court found that by November 1992, Bianco P.A., as represented by Bianco, and Farley "were, or reasonably should have been, aware that the missed statute of limitations would reasonably be expected to be the basis of a claim or suit against them" and should have given notice to Home at that time. Because they did not notify Home until March 1993, their notices were late. But the trial court concluded that no prejudice resulted to Home from the late notices, and therefore neither Bianco P.A. nor Farley forfeited coverage.

■ Generally, if an insured gives late notice, the insurer must show prejudice to deny coverage. *See Sutton Mut. Ins. Co. v. Notre Dame Arena*, 108 N.H. 437, 440, 237 A.2d 676, 678-79 (1968). The burden to show prejudice, however, may depend on the type of insurance. In liability insurance, "[a]n occurrence policy covers all

claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period." *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 918 (Tex. Ct. App. 1988) (quotation omitted). An insurer must show prejudice to deny coverage under an occurrence policy. *See Continental Cas. Co. v. Maxwell*, 799 S.W.2d 882, 886-87 (Mo. Ct. App. 1990).

■ The parties do not dispute that the policy in effect here was a claims-made policy. Claims-made policies provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period. *See Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 683, 633 A.2d 1384, 1386 (1993).

> There is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims made policy. This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred.

*Insurance Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 597 (Mo. Ct. App. 1996) (citation omitted); *see also Zuckerman v. Nat. Union Fire Ins.*, 495 A.2d 395, 406 (N.J. 1985). Claims-made policies necessarily include a presumption that the insurer suffers prejudice when the insurer does not receive timely notice of the claim during the policy period, preventing the insured from seeking coverage under subsequent policies. *See Chas. T. Main v. Fireman's Fund Ins.*, 551 N.E.2d 28, 30 (Mass. 1990).

■ When a claims-made policy obligates an insured to give notice upon receiving knowledge of any act or omission that "could reasonably be expected" to be the basis of a claim, it in effect accelerates a future claim to bring it within the current policy period. *See National Union Fire Ins. v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993). The insurer in turn obligates itself to treat the reported potential claim as an actual one that must be insured when it becomes actual in fact. *See id.* Accordingly, Bianco P.A.'s and Farley's failure to timely notify Home of the potential claim in 1992 forfeited coverage of the actual claim in 1993, and we reverse the trial court's decision granting Bianco P.A. and Farley coverage under the 1993-1994 policy.

Finally, Home argues that the failure to disclose the Martins' potential claim on Bianco P.A.'s renewal application constituted a material misrepresentation under RSA 417-C:1 (1998) that voided Bianco P.A.'s 1993-1994 policy. The renewal application asked: "Is any lawyer aware of any professional liability claim made against him in the past year, or any incident, act or omission which might reasonably be expected to be the basis of a claim, or suit, arising out of the performance of professional services for others?" Bianco answered, "No," even though he knew that the dismissal of the Martins' case might reasonably be expected to give rise to a claim against Bianco P.A.

■ Although RSA chapter 417-C is entitled, "Cancellation or Refusal to Renew Liability Insurance," RSA 417-C:1 is specifically entitled, "Cancellation of Fire and Casualty Insurance," and by its terms applies only to fire, casualty, marine, or multi-peril insurance. *See* RSA 417-C:1, I, :2 (1998). When construing statutory language, we apply the plain and ordinary meanings of the words used when possible. *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994). We determine legislative intent, "not in what the legislature might have said, but rather in the meaning of what it did say." *Id.* Because neither its title nor provisions include professional liability policies, RSA 417-C:1 does not apply here.

While there may be other legal or equitable grounds that justify rescission of the policy based on material misrepresentation, Home on appeal relies exclusively on RSA 417-C:1. We therefore reject its argument. *Cf. State v. Christy*, 138 N.H. 352, 360, 639 A.2d 261, 266 (1994) (court will not address issues not raised on appeal).

Any remaining issues raised in the notice of appeal but not briefed are waived. *See State v. Mountjoy*, 142 N.H. 648, 652, 708 A.2d 682, 685 (1998).

*Affirmed in part; reversed in part.*

THAYER, J., sat but did not participate in the decision; the others concurred.