U.S. District Court
No. 2004-326

CATHOLIC MEDICAL CENTER & a.

v.

EXECUTIVE RISK INDEMNITY, INC.

Argued: October 20, 2004
Opinion Issued: February 4, 2005

*Mallory & Friedman, PLLC*, of Concord (*Mark L. Mallory* on the brief and orally), for the plaintiffs.

*Hatem & Donovan,* of Salem (*Patrick E. Donovan* on the brief), and *Hogan & Hartson, L.L.P.,* of Washington, D.C. (*Jonathan A. Constine* orally), for the defendant.

NADEAU, J. This case comes before us on an order of certification of two questions of law by the United States District Court for the District of New Hampshire (*Barbadoro,* C.J.). We answer both questions in the negative.

The district court's order provides the following facts. The plaintiffs, Catholic Medical Center (CMC), Charles F. Carrier, M.D., Miguel Jurado, M.D., and Catholic Medical Center Physician Practice Associates, Inc., brought a declaratory judgment action against the defendant, Executive Risk Indemnity, Inc., seeking coverage under an insurance policy CMC purchased from the defendant. The policy was a claims-made policy effective from 12:01 a.m. August 1, 2001, to 12:01 a.m. August 1, 2002. The policy covers claims made against the insured during the policy period and claims made after expiration of the policy if CMC gives written notice of those potential claims to the underwriter before the expiration date.

On July 31, 2002, CMC's risk manager forwarded notices of seven potential claims to the defendant's claims manager by Federal Express Priority Overnight delivery. The notices were delivered on August 1, 2002, at 9:03 a.m., just over nine hours after expiration of the policy period. The defendant denied coverage for the seven potential claims because notice was not received during the policy period.

The parties filed cross-motions for summary judgment on the notice issue in district court. The district court has certified the following questions to this court:

1. Does an insured comply with a provision in a claims-made liability insurance policy requiring the insured to give written notice of acts that may result in future claims before the policy expires if the insured sends written notice via Federal Express while the policy is in effect but the notice is not received until after the policy expires?
2. If the answer to question 1 is no, is the insured nevertheless entitled to coverage if the insured substantially complies with the notice requirement and the insurer does not suffer prejudice as a result of the late notice?

The first certified question requires us to interpret the policy at issue. "The interpretation of insurance policy language is a question of law for

this court to decide." *Godbout v. Lloyd's Ins. Syndicates*, 150 N.H. 103, 105 (2003) (quotation omitted). "Where disputed terms are not defined in a policy or by State judicial precedent, we apply an objective standard, construing the terms in context and as would a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole." *Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 613 (2002). "If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer. We will not, however, perform amazing feats of linguistic gymnastics to find a term ambiguous." *Federal Bake Shop v. Farmington Cas. Co.*, 144 N.H. 40, 42 (1999) (quotation and citation omitted).

The plaintiffs first contend that they complied with the policy's notice provision because the phrase "gives . . . notice" is not defined in the policy and "should be interpreted to include the insured's delivery of written claims notices the day before expiration of the policy with the reasonable expectation that they would be received by the insurer the following morning." Alternatively, they argue that the phrase is ambiguous and should be interpreted in favor of coverage. The defendants, on the other hand, contend that under the plain meaning of the policy and the prevailing case law, notice is not given until it is received.

We have not yet had the opportunity to construe the phrase "give notice" in precisely this context. We note that in *American Employers Insurance Co. v. Sterling*, 101 N.H. 434, 436-37 (1958), in the context of what presumably was an occurrence-based policy, we assumed without discussion that notice of an occurrence was given when received by the insurer. Nevertheless, the plaintiffs point out that the policy nowhere expressly states that notice of an act or occurrence that might give rise to a claim must be *received* during the policy period. They further point out that the policy does use the term "receive" in other policy provisions and contend that by using "give" and "receive" in different provisions, the defendant "presumably [had] the intent to communicate different objectives and requirements."

The defendant, on the other hand, notes that a common definition of "give" is to put into another's possession, and argues that "[i]n common usage, the word 'give' implies both offer and receipt." It also points out that the policy provides for the "giving" of notice in some sections and "mailing" of notice in others, implying that mailing notice and giving it are not the same.

■ We note that we are not called upon to interpret the term "give" in isolation; rather, we construe policy terms in context. *See Panciocco*, 147 N.H. at 613. Here, we must determine the meaning of the phrase "gives the Underwriter written notice." We believe the term "notice" itself connotes the receipt of information. Furthermore, the implication of receipt is even stronger when the terms "give" and "notice" are taken together:

> [T]he term "written notice shall be given" carries with it the implication of receipt or delivery. ... One meaning of the verb "give" is "to deliver or transfer; to hand over." ... Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates. It is not, therefore the sending, but the receipt, of a letter that will constitute notice ....

*Baldwin v. Fidelity Phenix Fire Insurance Co. of N.Y.*, 260 F.2d 951, 953-54 (6th Cir. 1958) (quotations, citation and ellipses omitted). This accords with the common law rule stated in *Grenfell v. Anderson*, 989 P.2d 818 (Mont. 1999):

> "Where a statute or rule merely states that written notice must be given, without stating how it is to be given, it is not enough that the notice is mailed. It must also be received. In other words, the effective date of the notice is the day it is received, rather than the day it is mailed. The same rule applies in the case of a contract, in the absence of express provisions to the contrary."

*Id.* at 825 (quoting 58 AM. JUR. 2D *Notice* § 35 (1989)). We conclude that the phrase "gives ... notice" is unambiguous and requires that the notice be received in order to be effective.

The plaintiffs nevertheless argue that we should not interpret the policy in a manner that would cause a forfeiture of their rights under the contract. They contend that "[t]his court will, where possible, avoid construing a contract in a manner that leads to harsh and unreasonable results or places one party at the mercy of the other." *Thiem v. Thomas*, 119 N.H. 598, 604 (1979).

Were we in a position to construe ambiguous policy language, we would indeed prefer an interpretation that avoided harsh or unreasonable results. However, while we have "the duty to construe an insurance contract in a reasonable manner, [we are] not free to rewrite its terms by giving them a meaning which they never had." *Consoli v. Insurance*

*Company*, 97 N.H. 224, 226 (1951). We agree with the court in *Harbor Insurance Co. v. United Services Automobile Ass'n*, 559 P.2d 178, 181 (Ariz. Ct. App. 1976), that "when a policy's meaning and intent are clear, it is not the prerogative of the courts to create ambiguities where none exist or to rewrite the contract in attempting to avoid harsh results." The same prohibition applies to attempts to rewrite a policy to avoid a result claimed to be unreasonable. *See St. Louis Police Relief Ass'n v. Aetna Life Ins. Co.*, 154 S.W.2d 782, 787 (Mo. Ct. App. 1941). Because we concluded that the policy is unambiguous, we decline the plaintiffs' invitation to construe the policy to avoid what they contend is an unreasonable outcome.

The plaintiffs further assert that the fact that "the policy in question is a 'claims-made' form does not nullify the ordinary rules of policy construction." Specifically, they deny that time is of the essence in this contract simply because it is a claims-made policy.

"When time is not made of the essence in a contract, although a certain period of time is stipulated for the contract's completion, equity treats the time limitation as formal rather than essential . . . ." *Leavitt v. Fowler*, 118 N.H. 541, 543 (1978). "As a general rule, time is not considered to be of the essence unless the contract specifically states it is." *Mailloux v. Dickey*, 129 N.H. 62, 66 (1986). It is not required, however, that the exact phrase "time is of the essence" be used; rather:

> [I]n order to determine whether time is of the essence in an agreement, the trier of fact should not use a mechanical test, but should determine the intent of the parties in light of the instrument itself and all the surrounding circumstances, including the parties' words, actions, and interpretation of their agreement.

*Id.* (quotation omitted).

The plaintiffs do not dispute that the policy at issue is a claims-made policy. Such policies "provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period." *Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 296 (1999). We have not found a case that deals with a claims-made policy's notice requirement in explicit "time is of the essence" terms. *Cf. Chas. T. Main v. Fireman's Fund Ins.*, 551 N.E.2d 28, 30 (Mass. 1990). Several courts, however, have reached the functionally equivalent conclusion that "[b]ecause notice of a claim or potential claim defines coverage under a claims-made policy, we think that the notice provisions of such a policy should be strictly construed." *F.D.I.C. v. Barham*, 995 F.2d 600, 604 n.9 (5th Cir. 1993).

Indeed, we emphasized the special nature of claims-made policies in *Bianco,* where we held that by failing to timely notify the insurer of a potential claim, the insureds forfeited coverage. *Bianco,* 144 N.H. at 296. We observed that, generally, an insurer must show prejudice in order to deny coverage when the insured gives it late notice of an actual or potential claim. *Id.* at 295. We also noted, however, that the type of insurance at issue may affect the applicability of that general rule. *Id.* Specifically, we stated:

> There is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims made policy. This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred.

*Id.* at 296 (quotation omitted).

■ Based upon the facts provided to us in this case, we conclude that whether expressed in terms of time being of the essence, strict construction, or the absence of the insurer's general requirement to prove prejudice, the failure to give timely notice forfeits coverage under this claims-made policy as a matter of law. Until such a case presents itself, however, we need not deal with the hypothetical instance in which the insured itself discovers the potential claim only minutes before the policy expires, making it, presumably, physically impossible to give notice to the insurer within the policy period. *See Gulf Ins. Co. v. Dolan, Fertig and Curtis,* 433 So. 2d 512, 516 n.1 (Fla. 1983). This is not such a case.

The plaintiffs attempt to distinguish *Bianco,* stating that it does not "address[] the specific issue in this case: did the insured 'give notice' when the notice was sent overnight mail prior to the policy expiration and received on the Expiration Date." This argument merely brings us back full circle to what the policy phrase "gives ... notice" means. We have already determined that it requires receipt by the insurer and, accordingly, we answer the first transferred question in the negative.

We now turn to the second transferred question, which requires us to determine whether substantial compliance with the notice requirement and lack of prejudice to the insurer will nevertheless entitle the insured to coverage. The plaintiffs contend that *Bianco* "holds that claims-made

policies contain a 'presumption' of prejudice arising from untimely notice of a claim," but does not state whether that presumption is conclusive or rebuttable. The plaintiffs urge us, on the facts of this case, to adopt a rebuttable presumption rule.

The plaintiffs' argument relies upon the following statement in *Bianco*: "Claims-made policies necessarily include a presumption that the insurer suffers prejudice when the insurer does not receive timely notice of the claim during the policy period, preventing the insured from seeking coverage under subsequent policies." *Bianco*, 144 N.H. at 296. The plaintiffs read too much into our use of the word presumption. The observation is dicta, intended to explain the actual holding that precedes it: "There is *no requirement* that an insurance company prove it was prejudiced due to lack of notice under a claims made policy." *Id.* (emphasis added). Indeed, the case cited in *Bianco* immediately following the sentence relied upon by the plaintiffs, states that "[p]rejudice for an untimely report in [the case of a claims-made policy] is not an appropriate inquiry," and concludes that "[a] requirement that an insurer on a claims-made policy must show that it was prejudiced by its insured's failure to report a claim within the policy period or a stated period thereafter would defeat the fundamental concept on which claims-made policies are premised." *Chas. T. Main*, 551 N.E.2d at 30.

▮ For the reasons stated, we decline to adopt a rebuttable presumption of prejudice in claims-made policies. In addition, we note that the concept of substantial compliance urged by the plaintiffs is contrary to the rule of strict construction of notice requirements of claims-made policies. *See Barham*, 995 F.2d at 604 n.9. Having found that rule consonant with our own case law, we decline the plaintiffs' invitation to institute a substantial compliance exception. Accordingly, we answer the second transferred question in the negative.

*Remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.