Hillsborough–northern judicial district
No. 2005-068

TECH-BUILT 153, INC.

v.

VIRGINIA SURETY COMPANY, INC.
a/k/a COMBINED SPECIALTY INSURANCE COMPANY & a.

Argued: October 19, 2005
Opinion Issued: April 21, 2006

*Law Office of David C. Dunn P.A.*, of Manchester (*David C. Dunn* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for defendant Virginia Surety Company, Inc. a/k/a Combined Specialty Insurance Company.

*Jay E. Printzlau*, of Londonderry, by brief, for defendant Surge Resources, Inc.

BRODERICK, C.J. The plaintiff, Tech-Built 153, Inc. (Tech-Built), appeals an order of the Superior Court (*Conboy*, J.) granting motions for summary judgment filed by the defendants, Virginia Surety Company, Inc. a/k/a Combined Specialty Insurance Company (Virginia Surety) and Surge Resources, Inc. (Surge). The trial court ruled that an insurance policy issued by Virginia Surety to Surge did not provide workers' compensation coverage to Tech-Built, a client of Surge, for injuries sustained by an employee of one of Tech-Built's subcontractors. We affirm.

The undisputed facts are as follows. Tech-Built is a New Hampshire corporation involved in the construction industry. In April 1999, Tech-Built and Surge, an employee leasing company, entered into a client service agreement in which Surge agreed to furnish staff to Tech-Built to perform particular jobs. Surge operates under a workers' compensation and employers' liability insurance policy issued by Virginia Surety.

Tech-Built served as a general contractor for work performed at a condominium project in Weare. It contracted with another company (subcontractor) to perform framing, and the subcontractor in turn hired Scott Thomas. On March 11, 2003, Thomas sustained serious injuries as a result of a fall he suffered while working on site.

Thomas secured an award for workers' compensation coverage through the New Hampshire Department of Labor (DOL). Because the subcontractor did not carry workers' compensation insurance, the DOL determined that Tech-Built was liable under RSA 281-A:7 to pay Thomas' workers' compensation award. Thereafter, Tech-Built initiated a declaratory judgment action against Surge and its insurer, Virginia Surety, seeking workers' compensation coverage under the policy issued by Virginia Surety to Surge. The superior court granted the motions for summary judgment filed by Surge and Virginia Surety, concluding that the insurance contract issued by Virginia Surety extended workers' compensation coverage only to Surge employees leased to Tech-Built. Tech-Built appealed.

The parties dispute whether the insurance policy Surge secured from Virginia Surety extends coverage exclusively to Surge employees leased by Tech-Built, or to Tech-Built as a company. Item 1 of the policy's pre-printed information page provides a place to insert information setting forth the identity and mailing address of the "insured," classification of the insured as an individual, a partnership or a corporation, and "[o]ther workplaces not shown above" in the insured mailing address line. Surge's name is identified in the "insured" line along with the term "etal [*sic*]." Under the "[o]ther workplaces" caption, the phrase, "See A I/L Additional Named Insured and/or Locations" (hereinafter, endorsement), is inserted. In the endorsement, the phrase "Item (1) Insured of the Information page is amended to include the following" introduces well over one hundred fifty listed companies, including Tech-Built. From the interplay between the terms "et al." and "additional named insured," and the language in the endorsement, Tech-Built constructs its argument that it is a named insured under the policy. We do not agree.

When we review a trial court's grant of summary judgment,

> we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Dalton Hydro LLC v. Town of Dalton*, 153 N.H. 75, 77 (2005) (citations omitted).

"The interpretation of insurance policy language is a question of law for this court to decide." *Godbout v. Lloyd's Ins. Syndicates*, 150 N.H. 103, 105 (2003) (quotation omitted). The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties. *Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 409 (1992) (fundamental inquiry in interpreting contracts centers on determining intent of parties at time of agreement); *Lemars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) (cardinal principle in construction and interpretation of insurance policies is that intent of parties at time policy sold controls). To discern the parties' intent, we first examine the language of the contract itself. *See Lawyers Title Ins. Corp. v. Groff*, 148 N.H. 333, 336-37 (2002) (court generally discerns parties' intent from plain meaning of language used in contract); *EnergyNorth Natural Gas v. Continental Ins. Co.*, 146 N.H. 156, 159 (2001) (court construes insurance policy as it does any other contract).

The "GENERAL SECTION" of the insurance policy declares it as "a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page)." Similarly, in the section entitled "Who Is Insured," the policy states: "You are insured if you are an employer named in Item 1 of the Information Page." We acknowledge that Item 1 of the information page itself references Surge "etal [sic]" and the "[o]ther workplaces" subsection references the endorsement entitled "Additional Named Insured and/or Locations." Other language within the policy itself, however, reveals that the contracting parties anticipated that a single employer was named as the insured, namely Surge, and that coverage for that employer extended to all "workplaces" of that employer listed in the endorsement, namely Tech-Built and the more than one hundred fifty other companies. Specifically, paragraph E of the "GENERAL SECTION" portion of the policy states:

> This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

If all the companies listed in the endorsement were named insureds, rather than various workplaces of Surge's leased employees, paragraph E would be nonsensical. That is, there would be no other "workplaces listed in Item[] 1," but only named insureds. Moreover, there are several companies in the endorsement listed multiple times but with different locations. There would seem to be little need for the same companies to be listed in such a repetitive fashion had the contracting parties intended the listed companies to be named insureds rather than different work locations for Surge's leased employees.

Moreover, Surge's intent in securing workers' compensation coverage is clearly displayed in its leasing agreement with Tech-Built. In particular, the leasing agreement provides that "Surge . . . shall furnish . . . workers' compensation insurance covering all Surge Resources, Inc. employees filling Job Function Positions under the terms of this Agreement." Tech-Built does not dispute the meaning and intent of the leasing agreement for Surge to supply workers' compensation coverage exclusively for its leased employees. Indeed, it is evident that Surge was simply fulfilling its statutory obligation to secure a workers' compensation insurance policy that covered its leased employees. See RSA 277-B:9, II (1999). While Tech-Built points to certain documents to demonstrate that the intended scope of the policy extended beyond Surge's leased employees, we conclude that the documents create no genuine dispute of material fact concerning the

clear intent memorialized in the lease agreement as the final and clear expression by Surge to secure workers' compensation coverage only for its leased employees.

We acknowledge that, in general, we do not look beyond the four corners of the insurance contract to discern the intent of the contracting parties regarding the scope and extent of insurance coverage. Further, when a genuine ambiguity exists on the face of a policy, we construe the policy against the insurer in favor of coverage. *See Catholic Med. Ctr. v. Executive Risk Indem.*, 151 N.H. 699, 701 (2005). We conclude, however, that where the intent of the contracting parties can be conclusively resolved by objective extrinsic evidence, as in this case, we will not ignore that evidence in favor of dogmatic adherence to insurance maxims. *Cf. In re Rose Investments Inc.*, No. 93 B 13926, 1996 WL 596359, at *13-14 (Bankr. N.D. Ill. Sept. 16, 1996) (court reviewed objective extrinsic evidence to clarify intrinsic ambiguity). Indeed, when interpreting written agreements, we consider the language used by the contracting parties in light of "the circumstances and the context in which the agreement was negotiated," *Lawyers Title Ins. Corp.*, 148 N.H. at 336, and we typically construe insurance policies in the same manner as we do other contracts, *EnergyNorth Natural Gas*, 146 N.H. at 159.

Under Tech-Built's reading of the insurance policy, all of Surge's clients listed in the endorsement, over one hundred fifty businesses, would be considered named insureds. Thus, the policy would extend workers' compensation coverage to the extensive list of companies with, perhaps, untold numbers of employees and to the employees of subcontractors that may not have workers' compensation coverage as in the case before us. Based upon the undisputed facts of this case, such a result would be absurd. Accordingly, we conclude that the Virginia Surety policy, as informed by the leasing agreement between Surge and Tech-Built, was intended by the contracting parties to provide workers' compensation coverage solely for Surge's employees who were leased either to Tech-Built or to the other more than one hundred fifty companies listed in the endorsement.

As a final matter, Tech-Built contends that both Surge and Virginia Surety admitted in their answers to its petition for declaratory judgment that Tech-Built is a "named insured" under the policy. Thus, according to Tech-Built, this admission should preclude Surge and Virginia Surety from contesting coverage. In Tech-Built's petition, it averred that "The Policy identifies Surge and Tech-Built (among others) as named insureds" (named insured paragraph). In its answer, Surge replied that it "admits the allegations set forth in [the named insured paragraph], but denies any

376

inference that said coverage is applicable to the facts of this matter." Virginia Surety provided a similar response in its answer. During the hearing, the trial court interpreted the pleadings to mean that Surge and Virginia Surety agreed that the insurance policy identified Tech-Built as a named insured under certain circumstances, that is, to the limited extent Tech-Built used Surge's leased employees. We see no reason to disagree with the trial court's interpretation.

█ In sum, we conclude that interpreting the insurance policy to extend workers' compensation coverage exclusively to Surge employees it leases to the numerous companies identified in the policy endorsement constitutes the only fair reading of the policy as informed by the contracting parties' clear intent.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.