Belknap
No. 2006-530

### KRYSTIE CARTER

v.

### CONCORD GENERAL MUTUAL INSURANCE COMPANY & a.

Argued: March 21, 2007
Opinion Issued: May 30, 2007

*Normandin, Cheney & O'Neil, PLLC,* of Laconia (*James F. Lafrance* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.,* of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for respondent Concord General Mutual Insurance Company.

BRODERICK, C.J. Respondent Concord General Mutual Insurance Company (Concord General) appeals an order of the Superior Court (*Perkins,* J.) denying its motion for summary judgment and granting the summary judgment motion of the petitioner, Krystie Carter, in a declaratory judgment action to determine the coverage of a policy issued to her by Concord General. The question before the court was whether Carter's Concord General policy provided coverage for injuries she sustained when her feet were run over by a wagon pulled by a tractor at a hayride. We affirm in part, reverse in part, and remand.

I

It is undisputed that in October 2003, Carter was at Appleview Orchard for a "haunted hayride" event where her feet were run over by a wagon pulled by a tractor.

Photographs of the Appleview wagon submitted to the trial court and as part of the record on appeal show that it has neither brake lights nor fenders. The record contains no information, other than the photographs, concerning the mechanism by which the wagon was hitched to the tractor or whether the wagon was capable of being hitched to other kinds of motor vehicles. Carter advises us that those photographs "constitute[] all the available evidence with respect to this [wagon] that could be submitted."

In its brief, Concord General refers to the Appleview wagon as a "farm wagon," and while Carter does not dispute the facts set out in Concord General's brief, she "does dispute the labels or terms used to describe the object that ran over [her] feet," noting that "[t]he nature of the parties' dispute with respect to the term used to describe the object that ran over [her] feet will be apparent from the body of the parties' Arguments." In the trial court, Carter disputed "the characterization of the [wagon] that ran over her feet as a 'farm trailer' to the extent that this characterization by [Concord General] is meant to indicate that [it] cannot be pulled by an automobile, pick-up or van and/or it is mainly designed for use off public roads."

After her accident, Carter made claims against both the tractor operator's liability policy and her own Concord General personal auto insurance policy. Both insurers denied coverage; thereafter, Carter filed a petition for a declaratory judgment to determine coverage. *See* RSA 491:22 (1997). The tractor operator's liability insurer prevailed on its motion for summary judgment, and that ruling is not at issue in this appeal. The trial court also ruled, however, that Carter was entitled to both uninsured motorists coverage and medical payments coverage under her policy with Concord General. This appeal followed.

## II

When we review a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition. RSA 491:22-a (1997). The interpretation of insurance policy language is a question of law for this court to decide. *Tech-Built*, 153 N.H. at 373. When interpreting an insurance policy, we give the language used by the parties its reasonable meaning, based upon a reading of the policy as a whole. *OB/GYN Assocs. of S.N.H. v. N.H. Ins. Guaranty Assoc.*, 154 N.H. 553, 562 (2006). If more than one reasonable interpretation is possible, and one of them provides coverage, the policy contains an ambiguity and will be construed against the insurer. *Catholic Med. Ctr. v. Executive Risk Indem.*, 151 N.H. 699, 701 (2005). Our practice

of construing ambiguities against the insurer is particularly applicable when the language at issue is part of an exclusionary clause. *Contoocook Valley Sch. Dist. v. Graphic Arts Mut. Ins. Co.*, 147 N.H. 392, 394 (2001). However, we will not perform linguistic gymnastics to find a term ambiguous. *Catholic Med. Ctr.*, 151 N.H. at 701.

## III

In its order, the trial court determined that both the medical payments section and the uninsured motorists endorsement of Carter's Concord General policy were ambiguous and, therefore, properly construed against Concord General and in favor of coverage. We consider each portion of the policy in turn.

## A

The medical payments section of the policy provides, in pertinent part, that Concord General "will pay reasonable expenses incurred for necessary medical . . . services because of 'bodily injury' . . . [c]aused by accident; and . . . [s]ustained by an 'insured'." The policy then defines the term "insured" to mean "[y]ou . . . [a]s a pedestrian when struck by . . . a motor vehicle designed for use mainly on public roads or a 'trailer' of any type." The term "trailer" is defined in the policy's general definition section: "'Trailer' means a vehicle designed to be pulled by a: **1.** [p]rivate passenger auto; or **2.** [p]ickup or van . . . [and to] mean[] a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above."

The trial court found the foregoing language to be ambiguous but did not explain its reasoning. On appeal, Concord General argues that the policy unambiguously informed Carter that coverage for her injuries was not available under the medical payments section because the Appleview wagon was a farm wagon being pulled by a tractor, rather than a private passenger auto, pickup or van, thus placing it outside the definition of "trailer" and placing her outside the definition of "insured." More specifically, Concord General argues that: (1) photographs of the Appleview wagon "conclusively establish that [it] would constitute a farm wagon or farm implement"; (2) that a farm wagon or farm implement only qualifies as a "trailer" under its policy when it is towed by a private passenger auto, pickup or van; (3) it is undisputed that the Appleview wagon was being pulled by a tractor; and (4) because the wagon was not being pulled by a private passenger auto, pickup or van, it was, necessarily, not a "trailer" as that term is defined in the policy. Concord General also notes that Carter produced no evidence to counter its argument—based upon photographs of the wagon—that the wagon was not designed to be pulled by a private passenger auto, pickup or van.

Carter contends, to the contrary, that an ambiguity is created by the tension between the phrase "a 'trailer' of any type" in the medical payments section and the more narrow definition of "trailer" in the definition section, and that even if the policy is unambiguous, photographs of the wagon disclose that it was designed in a manner such that it could be pulled by a private passenger auto, pickup or van, as required by the policy's definition of "trailer." We do not agree.

█ To begin, we discern no ambiguity in the language of the policy. The petitioner argues that giving full effect to the qualifier "of any type" in the phrase "a 'trailer' of any type" creates a conflict between that provision and the narrower definition of "trailer" in the general definition section. That is not so. First, the general definition section comes before the medical payments section of the policy, meaning that by the time a reader gets to the phrase "a 'trailer' of any type," the term "trailer" has already been given its narrow, specialized meaning. More importantly, the phrase at issue is not "a trailer of any type" but "a 'trailer' of any type." The former phrase might create ambiguity; the latter does not. The latter phrase merely says that a person is an "insured" if she is a pedestrian struck by any type of "trailer," as that term has already been defined. Moreover, as the term "trailer" appears in quotation marks in the phrase "a 'trailer' of any type," the qualifier "of any type" cannot reasonably be read to expand the definition of "insured" to include pedestrians struck by trailers excluded from the definition of "trailer." Rather, the qualifier "of any type" is most reasonably read in the context of the larger phrase in which it appears: "a motor vehicle designed for use mainly on public roads or a 'trailer' of any type." A pedestrian policyholder struck by a motor vehicle is an "insured" only when that motor vehicle was "designed mainly for use on public roads," but if a pedestrian policy holder is struck by a vehicle towed by a motor vehicle, she would qualify as an "insured" if the towed vehicle was "designed mainly for use on public roads," and could qualify as an "insured" even if the towed vehicle was a "farm wagon or farm implement" not "designed mainly for use on public roads," so long as it was being towed by a private passenger auto, pickup or van. Because the term "'trailer' of any type" is not ambiguous, we reverse the trial court's determination that the medical payments section of the policy contains an ambiguity that must be construed against Concord General.

Carter also argues that even if the policy is not ambiguous, the Appleview wagon falls within the policy's narrow definition of "trailer." Carter made this argument in her motion for summary judgment, but given the trial court's ruling that the medical payments provision was ambiguous, it had no need to determine whether the wagon met the

policy's definition of "trailer," and it did not do so. However, because the application of the law to the facts is a question we review *de novo, see Tech-Built*, 153 N.H. at 373, we can make that determination ourselves.

The facts in this case concerning the wagon—such as they are—consist of four photographs. In each one, the wagon is hitched to a tractor. No photograph depicts the precise hitching mechanism. The photographs do show, however, that the wagon has neither brake lights, nor fenders, fender guards, or flaps. Carter argues, without pointing to any fact other than the photographs, that the wagon is "designed and capable of being pulled by either an auto or pickup or van" and further argues that "[s]ince Respondent did not demonstrate that the trailer involved in this accident was designed such that it could not be pulled by an auto or pickup or van, summary judgment was appropriate and Petitioner is entitled to medical payments coverage."

While Carter correctly states that Concord General had the burden of proving a lack of coverage, that burden required Concord General only to prove that the wagon in question was not designed to be pulled by a private passenger auto, pickup or van. In other words, Carter misapprehends what Concord General had to prove when she suggests that Concord General was obligated to prove that the wagon was incapable of being pulled by a private passenger auto, pickup or van. The policy's definition of "trailer" is not based upon what a particular vehicle *could* do, but, rather, it is based upon what that vehicle was *designed* to do. *Cf. Trombley v. Liberty Mut. Ins. Co.*, 148 N.H. 748, 752 (2002) (finding, in context of uninsured motorist coverage dispute, that "integrated toolcarrier" was "designed for use mainly off public roads" despite being licensed for, properly equipped for, and capable of using public roads).

■ The lack of brake lights demonstrates that the wagon in this case was not designed to be pulled by a private passenger auto, pickup or van. In New Hampshire, all motor vehicles, except farm tractors, are required to have brake lights. *See* RSA 266:38 (2004). The wagon in this case does not have brake lights. If it were hitched to a private passenger auto, pickup or van—each of which is required to have brake lights—the wagon would block the brake lights of the motor vehicle towing it, and would not compensate by having brake lights of its own. Accordingly, we conclude that a trailer designed to be pulled by a private passenger auto, pickup or van is one whose design includes brake lights. The trailer in this case, designed without brake lights, was not designed to be pulled by a private passenger auto, pickup or van.

■ Because the Appleview wagon was not designed to be pulled by a private passenger auto, pickup or van, it was not a "trailer" within the

meaning of the medical payments section of Carter's Concord General policy, and because Carter was not struck by "a 'trailer' of any type," she was not an "insured" for the purpose of qualifying for medical payments coverage. Accordingly, Concord General correctly denied Carter's claim for coverage under the medical payments section of her policy.

## B

The uninsured motorists endorsement of the Concord General policy provides, in pertinent part, that Concord General "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of . . . [a]n 'uninsured motor vehicle' . . . because of 'bodily injury' sustained by an 'insured' and caused by an accident." The endorsement defines "'[u]ninsured motor vehicle' [to] mean[] a land motor vehicle or trailer of any type." The endorsement, however, contains an exclusion providing that "'uninsured motor vehicle' . . . [does not] include[] any vehicle or equipment" that falls within any one of six described categories. At issue here is the fifth of those exclusions, which covers "any vehicle or equipment . . . [d]esigned mainly for use off public roads while not on public roads."

According to Concord General, the uninsured motorists endorsement unambiguously limited the term "trailer of any type" by expressly excluding "any vehicle or equipment . . . [d]esigned mainly for use off public roads while not on public roads." We disagree.

As a preliminary matter, it is undisputed that the accident took place on the property of Appleview Orchard, not on a public road. Moreover, we agree with Concord General that the Appleview wagon was "[d]esigned mainly for use off public roads." To operate lawfully on public roads in New Hampshire, a trailer must have brake lights, see RSA 266:38, and "proper fenders to prevent the throw, spray, or splash of water, dirt, or other matter [or] suitable fender guards or flaps which shall effectively reduce the throw, spray or splash likely to be emitted from any wheel or tire," RSA 266:57 (2004). The Appleview wagon was not designed to meet either of these requirements for operating on public roads. Thus, it necessarily was designed mainly for use off public roads, where those requirements do not apply.

Because the Appleview wagon was "[d]esigned mainly for use off public roads" and was "not on [a] public road[]" at the time of the accident, the applicability of the "off public roads" exclusion depends upon construction of the phrase "any vehicle or equipment" which introduces the policy's list of six exclusionary categories. If the wagon qualifies as "any vehicle or equipment," the "off public roads" exclusion applies, and Concord General is not obligated to provide coverage. If the wagon does not qualify as "any

vehicle or equipment," or if that phrase is ambiguous, then Carter is entitled to coverage. *See Catholic Med. Ctr.*, 151 N.H. at 701. We assume, for purposes of the analysis that follows, that it is reasonable to interpret the phrase "any vehicle or equipment" to include the Appleview wagon. The question before us is whether it is also reasonable to interpret that phrase not to encompass the Appleview wagon. We hold that it is.

When disputed terms are not defined in the policy or by our cases, we apply an objective standard, construing the terms in context and as would a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole. *Catholic Med. Ctr.*, 151 N.H. at 701. The definition section of the uninsured motorists endorsement begins by defining an "uninsured motor vehicle" as "a land motor vehicle or trailer of any type" and subsequently limits that definition by excluding "any vehicle or equipment" that falls within any one of six described categories. And, of course, absent statutory provisions or public policy to the contrary, insurers have a right to limit their liability by exclusions written in terms appropriate to convey their meaning and effect to a reasonable person in the position of the insured. *Empire Ins. Cos. v. National Union Fire Ins. Co.*, 128 N.H. 171, 175 (1986).

Here, a reasonable person in the position of the insured would note the shift in language from "land motor vehicle or trailer of any type" to "any vehicle or equipment." The former phrase plainly includes the Appleview wagon; that wagon is, indisputably, a "trailer of any type." If the phrase introducing the six categories of exclusion were intended to cover exactly the same items as the phrase in the main definition, *i.e.*, "land motor vehicle[s] or trailer[s] of any type," that intent would have been most clearly communicated by using the same phrase in both places. Accordingly, it is reasonable to conclude that the phrase "any vehicle or equipment" was intended to convey a different and narrower meaning than the phrase "land motor vehicle or trailer of any type." It is also reasonable to conclude that one of the different meanings conveyed by the shift in language is an exemption from the exclusion for trailers such as the one that injured Carter.

Perhaps our construction of the relevant terms is best illustrated with the concrete example of a pickup truck, a boat trailer and an air compressor designed to be towed by a truck with a trailer hitch. In terms of the definition of an "uninsured motor vehicle," the pickup truck would be a "land motor vehicle" while the boat trailer and compressor would each be a "trailer of any type." The boat trailer would be the type of trailer that is designed to carry something else, and the compressor would be the type of trailer that is not designed to carry something else. In terms of the phrase that introduces the list of exclusions, the pickup truck would be a

"vehicle"; the air compressor would be "equipment"; and the boat trailer, as a type of trailer other than equipment, would be neither "vehicle" nor "equipment." In this example, the boat trailer, by virtue of its exemption from the exclusion, would be an uninsured motor vehicle under any circumstances, while the pickup truck and the compressor would be uninsured motor vehicles only if they did not fall within any of the six exclusionary categories.

■ At first blush, it might seem unreasonable to say that a trailer designed to carry something else is not a vehicle. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2538 (unabridged ed. 2002) (defining "vehicle" as, among other things "a means of carrying or transporting something"). But it is not unreasonable, in the context of the specific policy language we are interpreting, to construe the word "vehicle" in the phrase "any vehicle or equipment" as referring only to a motor vehicle, given the previous use of the word "vehicle" in the phrase "a land motor vehicle." That previous usage makes it reasonable to construe the term "vehicle," when used subsequently, as referring only to motorized vehicles. And because the wagon in this case was not motorized, it is reasonable to construe the term "vehicle," in the context of this particular policy, as excluding the Appleview wagon.

## IV

Because only the uninsured motorists endorsement may be properly construed as providing coverage for Carter's injuries, we affirm in part, reverse in part and remand with instructions that the trial court enter judgment in accordance with this opinion.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.