Merrimack
No. 2005-187

ANNETTE D'AMOUR

v.

AMICA MUTUAL INSURANCE COMPANY

Argued: October 19, 2005
Opinion Issued: January 18, 2006

*Robert Stein & Associates, PLLC*, of Concord (*Robert A. Stein* on the brief and orally), for the plaintiff.

*Walker & Buchholz, P.A.*, of Manchester (*James G. Walker* on the brief and orally), for the defendant.

DUGGAN, J. The plaintiff, Annette D'Amour, appeals an order of the Superior Court (*Fitzgerald*, J.) granting a motion for summary judgment filed by the defendant, Amica Mutual Insurance Company (Amica). We affirm.

The record reflects the following facts. On the morning of April 7, 2003, D'Amour drove to her home at an apartment complex in Concord. She parked her vehicle in its designated parking space with the front of the vehicle facing away from the apartment. She got out of the car, opened the

back door on the driver's side and removed several coolers and a grocery basket to carry into her apartment. She proceeded to walk along the driver's side of the car, toward the rear of the vehicle, then alongside the rear bumper, when she slipped on ice and fell. D'Amour never reached the walkway leading from the parking lot to her apartment.

D'Amour's neighbor, J. Christopher Williams, who was sitting in his car in the parking lot, witnessed D'Amour's fall. Williams stated in an affidavit: "I observed [D'Amour] beginning to walk from her vehicle towards mine. D'Amour was carrying bags of groceries and other items in both her hands. . . . As D'Amour reach[ed] the driver['s] side rear of the vehicle parked between her car and my vehicle, she slipped on a patch of ice." In his affidavit, Williams said that, at the time of her fall, D'Amour was "[a]t the point behind the passenger rear of the vehicle parked between her car and my vehicle." He said that she struck Williams' vehicle "with her right shoulder . . . as she hit the ground." D'Amour alleged that, as a result of the fall, she sustained injuries to her shoulder, tailbone and leg, as well as a pulmonary embolism and pneumonia. Her medical bills totaled approximately $58,000.

At the time of the accident, D'Amour carried automobile liability insurance with Amica, which included medical payments coverage. When D'Amour requested payments, Amica denied coverage because, at the time of her injury, D'Amour was not "occupying" a vehicle as defined in the policy.

D'Amour filed a petition for declaratory judgment in the superior court to determine coverage. Amica filed a motion for summary judgment, asserting that D'Amour's injury was not related to her use of the vehicle because she was not "occupying" a motor vehicle at the time of her injury. The trial court granted Amica's motion.

In reviewing the trial court's summary judgment ruling, we must consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Peerless Ins. v. Vt. Mut. Ins. Co.*, 151 N.H. 71, 72 (2004). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* The facts before us are uncontested and we review the trial court's application of the law to the facts *de novo*. *Marikar v. Peerless Ins. Co.*, 151 N.H. 395, 397 (2004).

"Our analysis begins with an examination of the insurance policy language." *Peerless Ins.*, 151 N.H. at 72. "The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for the court to decide." *Id.* "We construe the language of an insurance policy as would a reasonable person in the position of the insured based on

a more than casual reading of the policy as a whole." *Wilson v. Progressive N. Ins. Co.*, 151 N.H. 782, 788 (2005).

We start by considering whether the language at issue is ambiguous. *See Oliva v. Vt. Mut. Ins. Co.*, 150 N.H. 563, 566 (2004). "Where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning." *Wilson*, 151 N.H. at 788. "If the language of the policy reasonably may be interpreted more than one way and one interpretation favors coverage, an ambiguity exists in the policy that will be construed in favor of the insured and against the insurer." *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41 (1994). "The fact that the parties may disagree on the interpretation of a term or clause in an insurance policy does not create an ambiguity." *Oliva*, 150 N.H. at 566 (quotation omitted). "In addition, policy provisions are not ambiguous merely because it is difficult to apply the factual situation to the specific policy language." *Id.* (quotation omitted).

The policy provides that Amica "will pay reasonable expenses incurred for necessary medical . . . services because of bodily injury . . . [s]ustained by an insured." The policy defines "insured" as "[y]ou or any family member . . . while occupying . . . a motor vehicle . . . ." The policy defines "occupying" as "in, upon, getting in, on, out or off."

On appeal, D'Amour argues that she was occupying her vehicle for purposes of coverage because she was in the process of "getting out" of the vehicle when she was injured. D'Amour argues that "occupying," when defined as "getting out," is ambiguous because it is susceptible to several reasonable and different interpretations. She argues that the ambiguity must be construed in her favor and against the insurer and, thus, there is coverage.

Amica argues that there is no basis for reasonable disagreement about the meaning of "occupying." It argues that mere disagreement about whether D'Amour was getting out of the vehicle at the time of her injury does not make the term "occupying" ambiguous. Amica also argues that D'Amour had completed the act of "getting out" of her vehicle and was not occupying it at the time she was injured.

Both parties rely upon *State Farm Mutual Automobile Insurance Co. v. Cookinham*, 135 N.H. 247 (1992). In *Cookinham*, the claimant was leaning her elbows on an insured vehicle in which she intended to accept a ride when she was struck by an uninsured vehicle. *Id.* at 248. The trial court ruled that the claimant was not entitled to medical coverage because she was not "occupying" the insured vehicle at the time of her injury. *Id.* at 249. The policy in *Cookinham* defined "occupying" as "in or upon or entering into or alighting from" the vehicle. *Id.* at 248. The issue was

whether the claimant was "upon" the vehicle and therefore "occupying" it at the time of her injury. *Id.* at 249-50.

The trial court in *Cookinham* ruled that the claimant was not entitled to coverage because she was "pedestrian or sidewalk oriented," rather than "vehicle oriented" at the time of the accident. *Id.* at 249. The trial court applied the "vehicle orientation standard," under which a claimant must be "engaged in a transaction essential to the use of the insured vehicle at the time of the accident" in order to be "occupying" the vehicle. *Id.* (quotation omitted). The trial court held that the claimant was not "occupying" the vehicle because she was not "engaged in a transaction essential to the use of the insured vehicle at the time of the accident." *Id.* On appeal, the insurance company urged us to adopt the trial court's interpretation of "occupying."

The claimant in *Cookinham*, however, argued that "occupying" should be interpreted literally and that, because she was leaning on the vehicle at the time she was injured, she was "upon" it and was within the policy's definition of "occupying." She relied upon *Mondelli v. State Farm Mutual Automobile Insurance Co.*, 506 A.2d 728 (N.J. 1986), where the claimant was struck and injured by an uninsured motorist while resting his arm on the roof of a parked vehicle. The court in *Mondelli* held that the claimant was "upon" the vehicle and therefore "occupying" it. *Id.* at 731.

We concluded that the term "occupying" was ambiguous because both parties presented a reasonable interpretation of its meaning. *Cookinham*, 135 N.H. at 250. Applying the claimant's interpretation, we held that she was entitled to coverage. *Id.*

Here, the parties agree that D'Amour was no longer "in or upon" the vehicle at the time of her injury. The parties also agree that a claimant need not have physical contact with the vehicle in order to be "occupying" it. Amica argues that a person is "getting out" of, and thus "occupying," a vehicle only while she is engaged in a transaction related to the motor vehicle. This interpretation is consistent with the vehicle orientation test and is therefore reasonable. *See id.*

D'Amour argues that "getting out" of, and thus "occupying," a vehicle includes "the process of moving away from the vehicle to a place of safety." We agree with D'Amour that, under the vehicle orientation test, "occupying" may include the process of moving away from the vehicle to a "place of safety." *See, e.g., Kantola v. State Farm Ins.*, 405 N.E.2d 744, 746 (Ohio Mun. 1979), (child found to be "alighting from" school bus when hit by car while crossing road to his home because he had not yet reached a "place of safety"); *Etter v. Travelers Ins. Cos.*, 657 N.E.2d 298, 302-03 (Ohio Ct. App. 1995) (claimant "getting out" because he had not reached a "place of safety" when standing on icy median approximately twenty feet

from his vehicle and pushing a vehicle that had slid off the road); *Olsen v. Farm Bureau Ins. Co. of Nebraska*, 609 N.W.2d 664, 670-71 (Neb. 2000) (claimant "alighting from" vehicle which had driven into a power pole because, although he was electrocuted by a live power line somewhere between four and forty feet from the vehicle, he remained within "zone of risk"); *State Farm Mut. Auto. Ins. Co. v. Holmes*, 333 S.E.2d 917, 918 (Ga. Ct. App. 1985) (decedent was "alighting from" vehicle because he had not reached a "neutral zone" when, a few feet from vehicle, he was swept away by floodwaters); *Nelson v. Iowa Mutual Ins. Co.*, 515 P.2d 362, 364 (Mont. 1973) (decedent was still "alighting from" vehicle stuck in a ditch during blizzard where she froze to death 143 feet from vehicle).

We agree with D'Amour that her interpretation of "occupying" as involving moving to a place of safety is reasonable. However, D'Amour does not fit within that definition. Where courts have found that claimants have not yet reached a place of safety, the claimants were exposed to unsafe conditions and were attempting to remove themselves from those conditions. D'Amour was not removing herself from an unsafe condition when she slipped and fell.

In making what appears to be an alternative argument, D'Amour relies upon two cases holding that claimants were "vehicle oriented" even though they were injured a considerable distance from their vehicles. In *Radmann v. Truck Insurance Exchange*, 660 So. 2d 975 (Miss. 1995), the claimant parked his truck and was hit and killed approximately 100 feet from the truck while crossing a highway toward a restaurant. The court held that "[the claimant] was in close physical proximity with the truck at the time of his accident so as to deem him vehicle-oriented." *Id.* at 978. In *Genthner v. Progressive Casualty Insurance Co.*, 681 A.2d 479 (Me. 1996), the court awarded coverage to a claimant who was standing in the road approximately 100 yards from the insured vehicle when he was hit by another vehicle while trying to obtain its license number. We believe that these cases are inconsistent with the vehicle orientation test, which requires claimants to be "vehicle oriented," rather than "highway oriented" or "sidewalk oriented." *See Etter*, 657 N.E.2d at 301. In these cases, the claimants were "highway oriented" and not "vehicle oriented."

■ D'Amour has not provided a reasonable interpretation of "occupying" that would apply to the facts of this case. We thus apply Amica's interpretation of "occupying" and conclude that D'Amour was "occupying" the vehicle only if she was "engaged in an activity essential to the use of the vehicle" at the time of an accident. *See Cookinham*, 135 N.H. at 249.

At the time of her injury, D'Amour had severed her connection to her vehicle. She was no longer engaged in activities essential to its use and was thus not "occupying" the vehicle. *See id.* at 250. This result is supported by cases from other jurisdictions. *See, e.g., Miller v. Loman*, 518 N.E.2d 486, 492 (Ind. Ct. App. 1987) (no recovery for claimant who had exited truck and walked approximately thirty feet to kick muffler to side of the road when hit by another vehicle because he "had embarked on a course of conduct . . . entirely distinct from acts reasonably necessary to make an exit from the car"); *Carta v. Providence Washington Indemnity Co.*, 122 A.2d 734, 737 (Conn. 1956) (no recovery for claimant run over by rolling vehicle after she had exited it and walked around its front, even though she was within inches of the vehicle, because "[a] person is not in the process of alighting if . . . he has embarked on a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car"). Accordingly, the superior court did not err by granting summary judgment to Amica.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.