Rockingham
No. 2005-230

MERCHANTS MUTUAL INSURANCE COMPANY

v.

LAIGHTON HOMES, LLC & a.

Argued: January 19, 2006
Opinion Issued: May 16, 2006

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for the plaintiff.

*Gawryl & MacAllister*, of Nashua (*Jared O'Connor* on the brief and orally), for defendant Laighton Homes, LLC.

DUGGAN, J. The plaintiff, Merchants Mutual Insurance Company (Merchants Mutual), appeals an order of the Superior Court (*McHugh*, J.) granting summary judgment to defendant Laighton Homes, LLC (general contractor). The issue presented is whether a subcontractor's commercial general liability (CGL) policy provides coverage for indemnification to a general contractor for a claim brought by the subcontractor's employee against the general contractor. The superior court ruled that the general contractor's indemnity claims were covered by the subcontractor's policy. We reverse and remand.

The record reflects the following facts. The general contractor hired as a subcontractor defendant Daniel Hardy d/b/a Flawless Finishes (subcontractor). On September 30, 2003, an employee of the subcontractor was injured in the course of his employment at the general contractor's worksite. At the time the employee was injured, the subcontractor did not carry workers' compensation insurance. The employee was thus not precluded from bringing a common law action against the subcontractor. RSA 281-A:7, IV (1999). The employee subsequently brought a negligence action against both the subcontractor and the general contractor, and the employee also sued the general contractor for workers' compensation benefits. *See* RSA 281-A:18 (1999).

The general contractor then brought cross-claims against the subcontractor. While it did not seek indemnification for the workers' compensation benefits owed to the employee, *see* RSA 281-A:18, it sought indemnity for its liability in the event that the employee prevails in his negligence action against the general contractor. Neither liability nor damages have been determined in the employee's underlying negligence action against the general contractor.

At the time of the employee's injury, the subcontractor carried a CGL policy with Merchants Mutual. The subcontractor sought coverage of the general contractor's indemnity claims from Merchants Mutual under this policy. Merchants Mutual denied coverage. Merchants Mutual then brought a petition for declaratory judgment against the subcontractor and the general contractor, seeking a determination that it was not obligated to defend or indemnify the subcontractor against the general contractor's claims. The subcontractor failed to appear and was defaulted. Merchants Mutual and the general contractor filed cross-motions for summary judgment, agreeing that there were no facts in dispute. The trial court granted summary judgment to the general contractor.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *D'Amour v. Amica Mut. Ins. Co.*, 153 N.H. 170, 171 (2006). The facts before us are uncontested and we review the trial court's application of the law to the facts *de novo*. *Id.*

The interpretation of the language of an insurance policy, like any contract language, is ultimately an issue for the court to decide. *Id.* We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Id.* at 171-72. We enforce a policy provision that limits the insurance company's liability when the policy language is clear and unambiguous. *See Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 561 (1997). If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer. *Catholic Med. Ctr. v. Executive Risk Indem.*, 151 N.H. 699, 701 (2005).

The Merchants Mutual CGL policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. . . .
>
> . . . .
>
> This insurance does not apply to:
>
> . . . .
>
> d. . . . Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> e. . . . "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
>> (a) Employment by the insured; or
>>
>> (b) Performing duties related to the conduct of the insured's business . . . .
>
> . . . .
>
> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CGL policies typically include both a workers' compensation exclusion and an employer's liability exclusion. *See* 9A L.R. RUSS & T.F. SEGALLA, COUCH ON INSURANCE, § 129:10, at 129-23, § 129:11, at 129-25 (3d ed. 2005); *see also American Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo. Ct. App. 2003). A workers' compensation exclusion "expressly excludes coverage for any obligation of the insured under a workers' compensation law or any similar law." 9A RUSS & SEGALLA, *supra* § 129:10, at 129-23. The employer's liability exclusion "exempts coverage for bodily injury to an employee arising out of and in the course of employment by the insured or during the performance of duties relating to the conduct of the insured's business." 9A RUSS &. SEGALLA, *supra* § 129:11, at 129-25. In the Merchants Mutual CGL policy, exclusion "d" is a workers' compensation exclusion and exclusion "e" is an employer's liability exclusion.

On appeal, Merchants Mutual argues that the trial court erred in two respects: (1) by misinterpreting *Royal Globe Insurance Co. v. Poirier*, 120 N.H. 422, 428 (1980), in ruling that exclusion "e" did not apply to the general contractor's indemnity claims against the subcontractor; and (2) by holding that exclusion "e" did not clearly and unambiguously apply to the general contractor's claims.

We begin by reviewing *Poirier*. In *Poirier*, the Nashua School District hired a subcontractor to restore a building. *Poirier*, 120 N.H. at 424. An employee of the subcontractor was fatally injured during the restoration. *Id.* The subcontractor carried workers' compensation and employer's liability (WCEL) insurance, as well as CGL insurance. *Id.* The employee's estate received workers' compensation benefits, but brought a separate action against the Nashua School District for damages arising out of the employee's death that were not compensable under workers' compensation insurance. *Id.* The Nashua School District instituted a third-party action against the subcontractor for indemnification for all damages that it may have owed the employee. *Id.* The insurer then brought a declaratory judgment action to determine its obligation to indemnify the subcontractor. *Id.*

Under the terms of the CGL policy in *Poirier*, the insurer agreed "to pay on behalf of [the subcontractor] all sums which he should become legally obligated to pay as damages because of bodily injury to which the insurance applies." *Id.* at 427. However, the CGL policy contained exclusion "j," which excluded coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment by the

insured or to any obligation of the insured to indemnify another because of damages arising out of such injury." *Id. Poirier* does not indicate whether the CGL policy contained a separate workers' compensation exclusion for claims compensable under workers' compensation insurance similar to exclusion "d" in Merchants Mutual's CGL policy.

In determining whether exclusion "j" applied to the Nashua School District's indemnity claims, *Poirier* recognized that "[t]he objective of [exclusion 'j'] is to avoid duplication of coverage with respect to the subject matters covered by a standard [WCEL] Policy." *Id.* (quotation omitted). *Poirier*, however, went on to say, "[W]e do not find that the language of exclusion 'j' effectively conveys to a reasonable person in the position of the insured that in an indemnity action all damages, whether or not covered by workmen's compensation, are excluded." *Id.* at 428. Thus, *Poirier* concluded that "exclusion 'j' does no more than exclude from liability coverage those damages that are compensable under a workmen's compensation policy." *Id.* As a result, *Poirier* required the insurer to indemnify under the CGL policy the "many damages claimed against the [Nashua School District] . . . not covered under the workmen's compensation policy." *Id.*

The trial court in this case reviewed *Poirier* and identified exclusion "j" in the *Poirier* policy as an employer's liability exclusion. In its order it stated that "[t]he holding in *Poirier* is that an employer's liability exclusion is ineffective against a third party indemnity claim." Relying upon its interpretation of *Poirier*, it concluded that because exclusion "e" in Merchants Mutual's policy is an employer's liability exclusion, it is ineffective against the general contractor's indemnity claims. The trial court thus required Merchants Mutual to indemnify the general contractor under the terms of the CGL policy.

On appeal, Merchants Mutual argues that the trial court misinterpreted *Poirier*. While it does not ask us to overrule *Poirier*, it urges us to recognize that "the core holding in *Poirier* [is] that a CGL Policy and [WCEL] Policy serve distinct purposes with respect to coverage." Accordingly, Merchants Mutual contends that a claim which is compensable under a WCEL policy cannot also be covered under a CGL policy. Merchants Mutual argues that the general contractor's indemnity claims in this case were the type of claims that were compensable under the employer's liability section of a standard WCEL policy. It argues that, under *Poirier*, we must conclude that these claims cannot be covered by CGL insurance since they were compensable under WCEL insurance. Merchants Mutual asserts that the subcontractor's failure to procure employer's liability insurance does not affect the applicability of the employer's liability exclusion, because the "fact that [the subcontractor]

did not procure [WCEL] coverage does not, and cannot, transfer the obligation from a [WCEL] policy to a CGL policy."

By contrast, the general contractor argues that *Poirier* held that the language of exclusion "j" was ineffective to exclude the Nashua School District's third party indemnity claims. It contends that, because the facts in this case are indistinguishable from the facts in *Poirier* and the language of exclusion "e" in the Merchants Mutual CGL policy is substantively identical to the language of exclusion "j" in *Poirier, Poirier* "dictates the outcome of this case." It argues that we must therefore conclude that exclusion "e" is ineffective against the general contractor's indemnity claims and that Merchants Mutual must provide coverage.

We disagree with the general contractor that it is clear from the *Poirier* opinion that *Poirier* squarely controls the outcome in this case. As the Fifth Circuit noted in a factually similar case, "[i]n *Poirier*, it is uncertain whether the applicable policy also contained an express exclusion discharging the insurer from coverage of workers' compensation claims, similar to the [workers' compensation exclusion] of the [applicable CGL] policy." *National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 199 n.2 (5th Cir. 1990). It thus found *Poirier* "[not] controlling." *Id.* at 200. Similarly, the Eighth Circuit relied upon *Kasler* and found *Poirier* "[not] controlling." *Pearson Services Inc. v. INA Ins. Co.*, 937 F.2d 401, 404 (8th Cir. 1991). The assumption underlying both *Kasler* and *Pearson* is that, if the CGL policy in *Poirier* contained only exclusion "j" and no separate workers' compensation exclusion, this would explain why *Poirier* held that exclusion "j" was simply a workers' compensation exclusion and why *Poirier* concluded that the language of exclusion "j" was ambiguous. We agree with *Kasler* and *Pearson* that *Poirier* is unclear, and thus disagree with the general contractor's assertion that *Poirier* squarely controls this case.

Given the uncertainty about the applicability of *Poirier* to the facts before it, *Kasler* considered the plain language of the employer's liability exclusion in the CGL policy. *Kasler*, 906 F.2d at 199-200. *Kasler* determined that the employer's liability exclusion "unambiguously discharges [the insurer] from its obligation to defend ... in third-party indemnification suits where ... the genesis of the action is an employee's work-related bodily injury." *Id.* Like *Kasler*, *Pearson* considered the plain language of the employer's liability exclusion and held that it "is unambiguous and ... excludes coverage for an indemnification claim that is based on damages arising out of an employee's work-related injury." *Pearson*, 937 F.2d at 404.

More fundamentally, by finding that the employer's liability exclusion unambiguously excludes third-party indemnity claims, *Kasler* and *Pearson*

strongly suggest that they would not follow *Poirier*'s conclusion that the language of exclusion "j" did not clearly and unambiguously apply to third-party indemnity claims for bodily injury arising out of and in the course of employment. We need not, however, determine whether *Poirier* was wrongly decided. Suffice it to say that the CGL policy before us clearly contains two separate exclusions, neither of which is ambiguous. We thus agree with *Kasler* and *Pearson* and follow their analysis by examining the plain language of exclusion "e" in the Merchants Mutual CGL policy to determine whether it applies to the general contractor's claims. *Cf. Kasler*, 906 F.2d at 199-200; *Pearson* 937 F.2d at 403-04.

■ The language of exclusion "e" in the Merchants Mutual policy excludes coverage of claims for "bodily injury" to an employee "arising out of and in the course of" his or her "employment by the insured." This language clearly and unambiguously applies to claims for bodily injury damages that arise out of an employee's employment by the insured. The "any obligation to share damages with or repay someone else who must pay damages because of the injury" language of exclusion "e" clearly and unambiguously applies to third-party indemnity claims. We thus find that exclusion "e" applies to the general contractor's claims for indemnification of bodily injury damages that arose out of and in the course of the employee's employment by the insured.

This interpretation of the exclusionary language is consistent with virtually every other jurisdiction that has considered this issue. *See Com'rs of State Ins. Fund v. INA*, 607 N.E.2d 795, 797 (N.Y. Ct. App. 1992) (holding that "[c]overage for [third-party indemnity] claims is excluded [by the employer's liability exclusion] in clear and unmistakable language . . . . To divine ambiguity here would . . . defeat the use of plain English language in this insurance policy and clause . . . .") (quotation and citation omitted); *Bassuk Bros., Inc. v. Utica First Ins. Co.*, 768 N.Y.S.2d 479, 481 (N.Y. App. Div. 2003) (holding that "[t]he plain meaning of the [employer's liability] exclusion was to relieve [the insurer] of liability when an insured . . . was sued . . . for damages arising out of bodily injury to an employee sustained in the course of employment"); *Fidelity and Guar. Ins. v. City of Kenner*, 894 F.2d 782, 785 (5th Cir. 1990) (holding that the employer's liability exclusion "unambiguously" excludes employee's injuries arising out of employment from coverage); *Hackensack Water Co. v. General Accident, Etc., Corp.*, 202 A.2d 706, 708 (N.J. Super. Ct. App. Div. 1964) (holding that "the third-party [claim] . . . was expressly excluded by [the employer's liability exclusion in] the policy"). *But see Overthrust Constructors, Inc. v. Home Ins. Co.*, 676 F. Supp 1086, 1089 (D. Utah 1987) (citing *Poirier*, court held that an exclusion identical to exclusion "j" in

*Poirier* did not cover third party indemnity actions because "[t]he plain meaning of the language would lead an insured reasonably to believe that it excludes only direct actions by employees").

Our conclusion is also consistent with learned treatises. HOLMES' APPLEMAN ON INSURANCE states, "To prevent possible duplication of coverage, the CGL policy excludes employers liability coverage." 21 E.M. HOLMES, HOLMES' APPLEMAN ON INSURANCE § 132.5, at 62 (2d ed. 2002). "Where an employee is injured in the course of his employment and is [entitled to] damages from a third party, the third party will often seek indemnification from the insured employer. Under these circumstances, the employer's liability exclusion typically precludes coverage of any amount the insured employer owed to the third party." 9A RUSS & SEGALLA, *supra* § 129:11, at 129-26 to 129-27. "The [employer's liability exclusion] . . . is generally clear, unambiguous, and enforceable." 21 HOLMES, *supra* § 132.5, at 67; *see also* 21 HOLMES, *supra* § 132.5, at 64 n.141; Annotation, *Construction and Application of Provision of Liability Policy, Other than Automobile Liability, Excluding from Coverage Injury or Death of Employee of Insured*, 34 A.L.R.3D 1397, 1420-22 (1970 & Supp. 2005); 9A RUSS & SEGALLA, *supra* § 129:11, at 129-27 n.4.

In light of the plain language of exclusion "e," we hold that the trial court erred by not ruling that the exclusion clearly and unambiguously applied to the general contractor's indemnity claims. Accordingly, we conclude that the plain language of exclusion "e" discharges Merchants Mutual from coverage of the general contractor's claims.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.