Hillsborough-northern judicial district
No. 2006-651

GEORGE NICOLAOU

v.

VERMONT MUTUAL INSURANCE COMPANY

Argued: May 23, 2007
Opinion Issued: July 19, 2007

*Cronin & Bisson, P.C.*, of Manchester (*John G. Cronin* on the brief and orally), for the plaintiff.

*Aten Clayton & Eaton PLLC*, of Littleton (*Gregory S. Clayton* on the brief and orally), for the defendant.

BRODERICK, C.J. The plaintiff, George Nicolaou, appeals an order of the Superior Court (*Conboy*, J.) granting a motion *in limine* of the defendant, Vermont Mutual Insurance Company (Vermont Mutual), which barred him from recovering the full replacement cost of his fire-damaged home and garage because he never undertook to repair or replace them. We affirm.

I

The record supports the following. While covered by a homeowners policy issued by Vermont Mutual, Nicolaou's home suffered extensive fire damage. Under "Coverage A," Nicolaou's policy has a stated liability limit of $223,000 for the dwelling. The policy also includes an endorsement titled

"Additional Limits of Liability for Coverages A, B, C, and D" (additional coverage endorsement), which pertains to replacement cost coverage.
 The additional coverage endorsement provides, in pertinent part:

A. If you have:

1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

a. The property evaluations we make; and

b. Any increases in inflation; and

2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling building which increase the replacement cost of the dwelling building by 5% or more;

*the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling building.*

B. If there is a loss to the dwelling building that exceeds the Coverage A limit of liability shown in the Declarations:

1. We will increase the Coverage A limit of liability to equal the current replacement cost of the dwelling building.

. . . .

4. For the purpose of settling that loss only, Section I Condition 3. Loss Settlement paragraph b. is deleted and replaced by paragraphs b., c., and d. as follows:

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

(1) The replacement cost of that part of the building damaged or destroyed;

(2) *The necessary amount actually spent to repair or replace the damaged or destroyed building;* or

(3) The limit of liability under this policy that applies to the building, increased in accordance with paragraphs B.1. and B.2. of this endorsement.

c. *We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.*

d. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

(Emphases added.)

After the fire, Nicolaou made a claim on his policy, and Vermont Mutual paid him $223,000, the policy's stated limit of liability on the dwelling. Nicolaou sought additional payments to cover, among other things, the replacement cost of his dwelling, notwithstanding that he had not undertaken to repair or replace it. When Vermont Mutual refused to provide payment beyond the stated limit of liability, Nicolaou filed suit against both Vermont Mutual and his insurance agent.

In the trial court, Vermont Mutual moved *in limine* for a ruling that under the terms of his homeowners policy, Nicolaou was not entitled to seek replacement costs unless he: (1) actually repaired or replaced the building and incurred replacement costs in excess of the settlement he received; and (2) complied with the relevant policy conditions. The trial court granted Vermont Mutual's motion. This appeal followed.

## II

The question before us is whether the trial court erred by ruling that under Nicolaou's Vermont Mutual policy, he was obligated to repair or replace his dwelling before he was entitled to replacement costs. Nicolaou makes two principal arguments: (1) that he is entitled to full replacement costs under RSA 407:11 (2006); and (2) the policy contains ambiguities that should be construed in his favor to provide replacement cost coverage. We disagree.

The interpretation of a statute is a question of law, which we review *de novo. In the Matter of Liquidation of Home Ins. Co.*, 154 N.H. 472, 479 (2006). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.*

The interpretation of insurance policy language is also a question of law for this court to decide. *Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006). We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Merchants Mut. Ins. Co. v.*

*Laighton Homes*, 153 N.H. 485, 487 (2006). Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Banfield v. Allstate Ins. Co.*, 152 N.H. 491, 494 (2005). However, if more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer. *Merchants*, 153 N.H. at 487.

### III

Nicolaou's first argument relies upon RSA 407:11 (policy value statute), which contains the following relevant language: "If a building insured for a specified amount ... is totally destroyed by fire or lightning without criminal fault on the part of the insured or his assignee, the sum for which such building is insured shall be taken to be the value of the insured's interest therein ...." Moreover, "[e]very provision and stipulation in a contract to which [RSA] chapter [407] is applicable in conflict with [that] chapter shall be void and no waiver of any part thereof shall be set up by the insurer." RSA 407:21 (2006). Presumably in recognition of RSA 407:11, Nicolaou's policy contains a "valuation clause" that provides: "If a building insured for a specified amount ... is totally destroyed by fire or lightning without criminal fault on the part of [the policyholder or his or her] assignee, the total amount for which the building is insured shall be taken to be the value of [the policyholder's] interest in the building."

According to Nicolaou, the "specified amount" for which his dwelling was insured was its replacement cost and, as a consequence, Vermont Mutual was obligated to pay that cost, regardless of whether he actually repaired or rebuilt the house. In other words, the premise of Nicolaou's argument is that there is a conflict between the policy value statute and the repair or replacement requirement of the additional coverage endorsement that voids the repair or replacement requirement.

 Initially, we note that it has never been determined as a factual matter that Nicolaou's house was totally destroyed by fire, which is a necessary prerequisite to the applicability of the policy value statute. However, because Vermont Mutual did, in fact, pay out the stated limit of liability, we assume without deciding that RSA 407:11 applies. That said, there is no conflict between RSA 407:11 and the additional coverage endorsement in Nicolaou's policy. In a case upon which Nicolaou relies, the Arkansas Supreme Court explained:

> Statutes [such as RSA 407:11] are passed for the purpose of avoiding the uncertainty of determining the value after the fire. The manifest policy of the statute is to guard against over-

insurance of the property. The agents of the company have the opportunity to inspect the property fully before taking the insurance and fixing the amount of the premiums. It is the valuation fixed in advance by the parties by way of liquidated damages in a case of a total loss by fire of the property insured without the fault of the insurer.

*St. Paul Reinsurance Co., Inc. v. Irons*, 45 S.W.3d 366, 369 (Ark. 2001) (quotation omitted). We are persuaded by *St. Paul*, and the conclusion that necessarily flows from it, *i.e.*, that the term "specified amount" in RSA 407:11 cannot refer to a covered structure's replacement cost—which could not be determined by a pre-insurance inspection—but must refer to the specific amount of coverage stated, in dollars and cents, in the policy. *See also Higgins v. Insurance Company of North America*, 469 P.2d 766, 773 (Or. 1970) ("Replacement Cost insurance does *not* provide *valued coverage.*" (quotation omitted)). The purpose of the policy value statute is to guarantee a policyholder payment of the dollar amount stated in the policy without having to defend against insurance company claims that the property was actually worth less than the stated limit of liability when the primary evidence, the property itself, has been destroyed. *See St. Paul*, 45 S.W.3d at 369; *Marchman v. Grange Mut. Ins. Co.*, 500 S.E.2d 659, 661 (Ga. Ct. App.) (explaining that Georgia policy value statute "protects property owners from the overwhelming burden of proving the value of property *after it has been totally destroyed by fire*"), *cert. denied* (Ga. 1998); 46 C.J.S. *Insurance* § 1109(a) (1993). Accordingly, we hold that there is no conflict between the policy value statute and the policy provision requiring Nicolaou to repair or replace his house before Vermont Mutual was obligated to pay him the difference, if any, between the stated limit of liability and the replacement cost of his house. *See Marchman*, 500 S.E.2d at 661 (rejecting policyholder's argument that policy value statute superseded repair or replacement requirement stated in replacement cost rider). Moreover, given our construction of RSA 407:11, it is clear that by paying Nicolaou $223,000, the amount stated in the policy, Vermont Mutual has fully complied with that statute.

Nicolaou makes several subsidiary arguments we briefly discuss. First, he argues that the repair or replacement requirement is of no import when a building is totally destroyed. That is simply not the case. *See, e.g., Burchett v. Kansas Mut. Ins. Co.*, 48 P.3d 1290, 1290, 1291-92 (Kan. Ct. App. 2002) (holding that repair or replacement was precondition to recovery of replacement costs in case involving total destruction of insured dwelling); *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 186, 189-90 (Ala. 1990) (same). Moreover, the additional coverage endorsement itself refers to

"[t]he necessary amount actually spent to repair or *replace* the damaged or *destroyed* building" (emphasis added), thus demonstrating the applicability of the repair or replacement requirement in the context of a total loss.

■ Second, relying upon *Ferguson v. Lakeland Mutual Insurance Co.*, 596 A.2d 883 (Pa. Super. Ct. 1991), *appeal denied*, 611 A.2d 712 (Pa. 1992), and *SR International Business Insurance Co. v. World Trade Center Properties, LLC*, 445 F. Supp. 2d 320 (S.D.N.Y. 2006), Nicolaou argues that the repair or replacement requirement is unconscionable. Nicolaou's authorities are not persuasive. In *Ferguson*, the insurer denied the policyholders' claim. *Ferguson*, 596 A.2d at 884. What was unconscionable in that case was requiring the policyholders to repair or replace their property before they knew whether their insurer would provide any coverage at all. *See Burton v. Republic Ins. Co.*, 845 A.2d 889, 897-99 (Pa. Super. Ct. 2004) (declining to extend the unconscionability analysis of *Ferguson* to case in which insurer did not deny coverage). Here, Vermont Mutual did not deny coverage, but paid $223,000 within several weeks after the fire. Thus, Vermont Mutual's reliance upon the repair or replacement condition for paying replacement costs was not unconscionable under the rationale of *Ferguson*. *SR International* is similarly unavailing. In that case, the policyholder's right to collect replacement costs was not even before the court. *SR International*, 445 F. Supp. 2d at 333. Accordingly, we do not agree with Nicolaou that the repair or replacement requirement is either inapplicable to total losses or unconscionable. *Cf. Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1292 (9th Cir. 1996) (holding that insurer that had paid actual cash value of loss was not estopped from conditioning payment of replacement cost upon repair or replacement of covered property).

## IV

Nicolaou next argues that his policy contains two ambiguous terms that must be construed against Vermont Mutual and in favor of his claim for replacement cost coverage. We disagree.

■ According to Nicolaou, the term "specified amount" in the valuation clause may reasonably be construed either as the limit of liability listed in the coverage section of the policy or as the replacement cost. In common parlance, the word "specify" means, among other things, "to mention or name in a specific or explicit manner : tell or state precisely or in detail ... to make specific ... to speak precisely or in detail : give full particulars." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2187 (unabridged ed. 2002). In turn, the common definition of the word "specific" includes

"characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving) : free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." *Id.* Based upon the natural and ordinary meanings of the words "specify" and "specific," it is not reasonable to construe the policy term "specified amount" as referring to the replacement cost of a covered building. Unlike a limit of liability stated in dollars, which is fixed and definite at the time a policy is issued, the replacement cost of a building is necessarily contingent, inexplicit, imprecise and unamenable to detailed description of its full particulars until some undetermined point in the future. Accordingly, we hold that the term "specified amount" may not reasonably be construed in a way that would provide Nicolaou with replacement cost coverage. *See Catholic Med. Ctr. v. Executive Risk Indem.*, 151 N.H. 699, 701 (2005) ("We will not . . . perform amazing feats of linguistic gymnastics to find a term ambiguous.").

▮ Nicolaou also argues that the term "actual cash value" in the additional coverage endorsement is ambiguous. According to Nicolaou, "actual cash value" may reasonably be construed to mean the stated limit of liability in his policy or the replacement cost of his home. There are two problems with that argument. First, the additional coverage endorsement provides that Vermont Mutual "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." Thus, by its own language, the endorsement provides that after actual repair or replacement is complete, Vermont Mutual might pay more than the actual cash value of the damage. But because there is no circumstance under which Vermont Mutual would ever pay more than the replacement cost, unless the replacement cost was less than the stated limit of liability, it is not reasonable to construe the term "actual cash value" to mean "replacement cost." Second, the additional coverage endorsement also provides that the policyholder "may disregard the replacement cost loss settlement provisions and make claim . . . on an actual cash value basis." That provision would make no sense if "replacement cost" and "actual cash value" were synonymous. Finally, we note that at least one other court has determined, in the context of a similar insurance policy, that the term "actual cash value" is not ambiguous. *See Burton*, 845 A.2d at 894.

In sum, we conclude that Nicolaou's policy clearly and unambiguously required him to repair or replace his house before Vermont Mutual would incur any obligation to pay him the difference between the stated limit of liability and the replacement cost. *See Marchman*, 500 S.E.2d at 660-61 (discerning no ambiguity in similar policy language).

■ Finally, at oral argument, Nicolaou contended that under the additional coverage endorsement, he did not have to actually repair or rebuild, but only *elect* to do so. In his view, once he stated an intention to repair or rebuild, he was entitled to replacement costs but had no obligation to actually repair or replace his house. Because Nicolaou did not brief that issue, we deem it to have been waived. *See Appeal of Town of Nottingham*, 153 N.H. 539, 555 (2006). However, even if the argument were properly before us, the arguments against it are persuasive. Allowing a policyholder to recover replacement costs without actually repairing or rebuilding would leave him in a better position as a result of the fire than the position he was in before the fire, which is the "moral hazard" that the repair or replacement requirement is intended to avoid. *See Higgins*, 469 P.2d at 773; *Gilbert v. North Carolina Farm Bureau*, 574 S.E.2d 115, 118 (N.C. Ct. App. 2002) ("The reason insurers place this [repair or replacement] provision in insurance policies is to prevent an insured from making a profit from a loss." (quotation omitted)), *aff'd*, 580 S.E.2d 691 (N.C. 2003). Accordingly, we agree with those courts that have rejected the argument that a stated intent to repair or replace is sufficient to trigger an insurer's obligation to pay the full replacement cost of an insured building. *See Hilley*, 562 So. 2d at 190 ("a mere intention to replace does not trigger the insurer's replacement cost payment obligations"); *National Tea Co. v. Commerce & Industry Ins.*, 456 N.E.2d 206, 211 (Ill. App. Ct. 1983).

The Kansas Court of Appeals has noted that the courts of this country have all but "unanimously held that actual repair or replacement is a precondition to recovery on a replacement cost policy." *Burchett*, 48 P.3d at 1292 (collecting cases). Today we join those jurisdictions so holding.

V

Nicolaou also asks us to hold that the exclusion of the insurance industry from the Consumer Protection Act, RSA chapter 358-A (1995 & Supp. 2006) is unconstitutional. However, the arguments Nicolaou raises here regarding the Consumer Protection Act were never raised in the trial court. Thus, they have not been preserved for our review, and we decline to address them. *See Miller v. Blackden*, 154 N.H. 448, 456 (2006) ("It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial.").

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.