Hillsborough-northern judicial district
No. 2006-904

JOHN MILLER, SR., AS ADMINISTRATOR OF THE ESTATE OF
JOHN G. MILLER, JR.

v.

AMICA MUTUAL INSURANCE COMPANY

Argued: June 7, 2007
Opinion Issued: August 28, 2007

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* and *Steven J. Dutton* on the brief, and *Mr. Harris* orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Michael M. Lonergan & a.* on the brief, and *Timothy A. Gudas* orally), for the defendant.

DUGGAN, J. The defendant, Amica Mutual Insurance Company (Amica), appeals an order of the Superior Court (*Abramson*, J.), granting summary judgment to the plaintiff, John Miller, Sr., as administrator of the estate of John G. Miller, Jr. The court ruled that Amica was required to provide uninsured motorist coverage under a policy issued to the decedent. We affirm.

## I. Background

The facts are not in dispute. In April of 2005, the decedent was the victim of a hit-and-run accident on Interstate 495 in Massachusetts. The accident was the result of an unfortunate chain of events. As the decedent was traveling, his motorcycle got caught in a rut in the roadway and he was thrown forty feet from it. Passersby stopped to help him and to reroute traffic, but he ultimately was hit by an oncoming vehicle while lying in the road. He later died from the injuries he sustained. Although the vehicle that hit him stopped briefly, it later fled, and neither it nor its driver has ever been identified.

At the time of the accident, the decedent owned a 2000 Jeep Cherokee that was insured under an automotive policy issued by Amica. The motorcycle, however, was not insured. The policy contained uninsured motorist coverage which provided, in pertinent part: "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of [an] uninsured motor vehicle because of bodily injury sustained by an insured and caused by an accident." For purposes of coverage, an "uninsured motor vehicle" included any "hit and run vehicle whose operator or owner cannot be identified and which hits ... you or any family member." An owned vehicle exclusion, however, precluded coverage for any injuries sustained "[b]y an insured while occupying, or when struck by, any motor vehicle owned by that insured which is not insured for this coverage under this [p]olicy." "[O]ccupying" is defined as "in, upon, getting in, on, out or off" of a vehicle.

At some time after the decedent's death, the plaintiff initiated a declaratory judgment action in superior court, seeking compensation for the decedent's injuries under the policy's uninsured motorist coverage provisions. The parties cross-moved for summary judgment, and the issue became whether the decedent was "occupying" the motorcycle for purposes of the owned vehicle exclusion. The superior court ruled that the term "occupying" was not ambiguous, and that the decedent was not occupying his motorcycle at the time he was hit. The court also ruled that

a reasonable person in the position of the insured would not view someone lying in the middle of the highway forty feet from his motorcycle for a period of time between thirty seconds to one and a half minutes as "in, upon, getting in, on, out or off" that motorcycle . . . .

The court also ruled that, regardless of whether "framed in temporal terms or spatial terms," the plaintiff had put forth a reasonable interpretation of the policy: "that one who has been ejected from his motorcycle, and is lying in the highway forty feet away from that motorcycle as traffic is directed around him, is no longer 'occupying' the motorcycle."

On appeal, Amica contends that the superior court erred as a matter of law in ruling that the decedent was not "occupying" the motorcycle. It argues that the decedent was "occupying" the motorcycle because he had not reached a place of safety and had not severed his connection to the motorcycle. It also argues that the plaintiff could not reasonably expect coverage under the circumstances. The plaintiff counters that the plain meaning of "occupying" and the terms included in its definition do not describe someone who has been thrown forty feet from his vehicle and is laying in the roadway for a period of time before being struck.

*II. Discussion*

Our standard of review is well-settled.

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248 (2006).

Resolution of this dispute requires us to interpret the policy. Interpretation of the language in an insurance policy is a question of law. *Peerless Ins. v. Vt. Mut. Ins. Co.*, 151 N.H. 71, 72 (2004). We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole. *Wilson v. Progressive N. Ins. Co.*, 151 N.H. 782, 788 (2005). Where the terms of the policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.* However, if the policy is

reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. *Id.* Absent a statutory provision or public policy to the contrary, an insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language. *Trombley v. Liberty Mut. Ins. Co.*, 148 N.H. 748, 751 (2002). For exclusionary language to be considered clear and unambiguous, two parties cannot reasonably disagree about its meaning. *Id.*

■ Amica contends that in interpreting "occupying" under the policy, we must apply the familiar vehicle-orientation test. "The vehicle orientation test requires that a claimant be engaged in an activity 'essential to the use of the vehicle' when the accident occurs." *State Farm Mut. Auto. Ins. Co. v. Cookinham*, 135 N.H. 247, 249 (1992). "[U]nder the vehicle orientation test, 'occupying' may include the process of moving away from the vehicle to a 'place of safety.'" *D'Amour v. Amica Mut. Ins. Co.*, 153 N.H. 170, 173 (2006). If, however, a claimant has severed his or her connection to the vehicle, then he or she is no longer occupying the vehicle. *Id.* at 174-75.

We have applied the vehicle orientation test to the definition of "occupying" on two previous occasions. In those cases, a coverage section of the policy was at issue. Therefore, if the individual was "occupying" the vehicle, coverage was required. If the individual was not "occupying" the vehicle, coverage was not required. Here, by contrast, the converse is true because a policy exclusion is at issue. Therefore, if the individual was "occupying" the vehicle, coverage was not required. If the individual was not "occupying" the vehicle, coverage was required.

In *Cookinham*, Faith Cookinham was leaning against a Camaro with her elbows and forearms on the back of the trunk while speaking with friends. *Cookinham*, 135 N.H. at 248. The owner of the Camaro soon noticed a vehicle, later discovered to be uninsured, rapidly approaching and attempted to push Cookinham out of its way. *Id.* The owner's efforts were "ineffective" and Cookinham was "struck by the vehicle, propelled over the Camaro, and seriously injured." *Id.* Under the owner's insurance policy, Cookinham would have been entitled to uninsured motorist coverage for her injuries only if she had been "occupying" the Camaro at the time of the accident. *Id.* The policy defined "occupying" as "in or upon or entering into or alighting from" the insured vehicle. *Id.* (quotation omitted).

Cookinham contended that she was "'occupying' [the Camaro] under the terms of the policy because she was 'upon' [it]." *Id.* at 249-50. The insurer, on the other hand, argued that the vehicle orientation test was "consistent with the policy definition of 'occupying,'" and that Cookinham was not vehicle-oriented. *Id.* at 249. We held that the term "occupying" was

ambiguous because both Cookinham and the insurer had offered reasonable interpretations of that term. *Id.* at 249-50. Thus, we concluded that the policy should be construed in favor of coverage. *Id.* at 250.

In *D'Amour*, the insured drove to her apartment complex in Concord, parked in her designated parking space, got out of her vehicle, opened the driver's side rear door, removed several coolers and a grocery basket, and proceeded to walk along the driver's side toward her apartment. *D'Amour*, 153 N.H. at 170-71. Alongside the rear bumper, she slipped on ice and fell. *Id.* At the time of her slip and fall, the insured's policy with Amica provided coverage for bodily injury sustained while "occupying" the vehicle. *Id.* at 172. The definition of "occupying" was the same as it is in this case. *Id.* Amica maintained that the insured was not "occupying" her vehicle at the time of the slip and fall because she had completed the act of "getting out" of it. *Id.* It maintained that one could be "getting out" of the vehicle only if he or she was engaged in a transaction related to the vehicle. *Id.* at 173. The insured argued that she was "getting out" of her vehicle at the time because she was in the process of moving away from the vehicle to a place of safety. *Id.* Alternatively, she argued that "getting out" was ambiguous and should have been construed in her favor. *Id.* We held that both Amica and the insured had offered reasonable interpretations of "getting out," but that the insured's conduct did not fit within the definition she offered because she had severed her connection with her vehicle and because she was not removing herself from an unsafe situation when she fell. *Id.* at 174-75. Thus, we held that she was not "occupying" the vehicle. *Id.*

Amica contends that *Cookinham* and *D'Amour* require us to hold that the decedent was vehicle-oriented. We do not agree. Cookinham was clearly physically upon the Camaro (she was leaning on it) at the time she sustained the injuries for which she sought coverage. *Cookinham*, 135 N.H. at 248. Thus, she was clearly "occupying" it. Here, by contrast, the superior court found that the decedent had been ejected from his motorcycle and was "lying in the middle of the highway forty feet from his motorcycle for a period of time between thirty seconds to one and a half minutes" at the time he suffered the lethal injuries for which coverage is sought. This circumstance is not, therefore, analogous to *Cookinham*.

Citing *D'Amour*, Amica argues that the decedent in the instant case had not yet reached a place of safety, and therefore was vehicle-oriented. The "place of safety" inquiry, however, is commonly applied in the context of people who leave their vehicles to go from an unsafe place to a safe one. *See D'Amour*, 153 N.H. at 174. No one can seriously argue that the decedent was trying—let alone able—to take himself to a place of safety. Amica observes that if the decedent had been able to get up and walk away

from his position in the roadway, he likely would have satisfied the "place of safety" test. While that may be true, subtle factual distinctions can make the difference in questions of coverage.

Citing *D'Amour* and *Dunlap v. United States Automobile Association*, 470 So. 2d 98, 99 (Fla. Dist. Ct. App. 1985), Amica also contends that the decedent was vehicle-oriented because he had not severed his connection to the motorcycle. *Dunlap*, however, emphasizes that the insured was "occupying" the motorcycle because he was hit "immediately following an accidental, involuntary ejection from the vehicle." *Id.* at 100; *see also Schmidt v. State Farm Mut. Ins. Co.*, 750 So. 2d 695, 697-98 (Fla. Dist. Ct. App. 2000) (explaining that under *Dunlap*, individual is "occupying" vehicle only if injured *immediately* upon ejection, and that whether injury is "immediate" is a factual question that takes into account how much time has passed and the insured's conduct between ejection and being injured). We do not need to determine in this case whether someone who is hit "immediately" after being ejected from his vehicle is "occupying" it because the decedent was lying in the road for thirty to ninety seconds before he was hit. He was not "in, upon, getting in, on, out or off" of the motorcycle. Rather, his connection had been severed.

■ *D'Amour* does not require us to hold otherwise. Since *D'Amour* involved an insured who was voluntarily carrying her groceries away from her vehicle at the time she sustained her injuries, a significantly different factual circumstance, it is difficult to draw any type of meaningful comparison between that case and this one. *D'Amour*, 153 N.H. at 170-71. Accordingly, we reject Amica's argument and conclude that the decedent had severed his connection to the motorcycle.

Confronted with nearly identical factual circumstances, the Washington Supreme Court held that an insured was not "occupying" her motorcycle within the plain meaning of an owned-vehicle exclusion. *Mid-Century Ins. Co. v. Henault*, 905 P.2d 379 (Wash. 1995). In *Henault*, the insured, Henault, "sustained injuries when she was struck by an uninsured/underinsured motorist as she lay in the roadway after having been ejected from her uninsured motorcycle in an earlier collision." *Id.* at 380. Her insurer contended that she was not entitled to uninsured motorist coverage because of an owned-vehicle exclusion that precluded coverage "[w]hile occupying" an uninsured vehicle owned by the insured. *Id.* The policy defined "occupying" as "'in, on, getting into or out of' a motor vehicle." *Id.* at 381.

The insurer contended that Henault was "occupying" her motorcycle because "any injuries [she] sustained as a result of [being hit by a vehicle while she was lying in the roadway] related to one risk—that of riding an

uninsured motorcycle." *Id.* at 383. The Washington Supreme Court rejected this argument, reasoning:

> Henault does not seek coverage for injuries sustained when she was thrown to the pavement . . . . Rather, she seeks coverage for injuries she sustained when she was struck . . . as she lay in the roadway sometime *after* having been ejected from her motorcycle . . . .
>
> . . . The policy, which [the insurer] drafted, unambiguously defines "occupying" as "in, on, getting into or out of" a motor vehicle. Given this unambiguous definition, it cannot be said that the average insurance purchaser would reasonably conclude that Henault was "occupying" her uninsured motorcycle under the circumstances presented here. On the contrary, it is reasonable to conclude that when [she sustained the injuries for which she sought coverage], Henault, who had been lying in the roadway for an unspecified period of time, clearly was not "in, on, getting into, or getting out of" her motorcycle and therefore she was not "occupying" it. We hold therefore that Henault was not "occupying" her owned, but not insured, motorcycle when she was struck by an uninsured motorist as she lay in the roadway after having been ejected from her motorcycle . . . .

*Id.*

We find this reasoning persuasive. The issue presented is whether the facts of this case fall within the policy's definition of "occupying." It may be counterintuitive to analyze that issue without considering whether the accident would have occurred if the decedent had never been upon his motorcycle in the first place. However, that is precisely what must be done—and what the Washington Supreme Court did—for the policy's plain language does not provide otherwise.

Amica, however, contends that no reasonable insured would expect uninsured motorist coverage for injuries that arise out of driving or using a vehicle that is not insured under a policy. *See Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006) ("The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties."). This argument has some appeal. However, the plain language of the owned-vehicle exclusion and the definition of "occupying" undermine it. *See Lawyers Title Ins. Corp. v. Groff,* 148 N.H. 333, 336-37 (2002) (court generally discerns parties' intent from plain meaning of language used in contract). If Amica wished to exclude from coverage injuries *arising out of* the use of—as opposed to "while occupying"—"any motor vehicle . . . which is not insured for . . .

coverage under [the policy]," it could very easily have done so. *See Trombley*, 148 N.H. at 751 (insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language). It did not.

Citing *Turner v. St. Paul Property & Liability Ins. Co.*, 141 N.H. 27, 30 (1996), Amica argues that nothing in New Hampshire law requires uninsured motorist coverage for persons not "occupying" a vehicle listed in the policy. True. However, our holding is not that New Hampshire law, in its own right, requires coverage. Instead, it is that Amica's policy—which it drafted—provides coverage under the circumstances here present. If Amica wishes a different result, it may redraft its policy. This conclusion is not inconsistent with the overall goal of New Hampshire's uninsured motorist coverage statute, which is to promote a "public policy of placing insured persons in the same position that they would have been if the offending uninsured motorist had possessed comparable liability insurance" by broadening protection for those injured in accidents involving uninsured motorists. *Swain v. Employers Mut. Cas. Co.*, 150 N.H. 574, 579 (2004) (Broderick, C.J., dissenting); *see also Henault*, 905 P.2d at 383.

### III. Conclusion

Both the plaintiff and Amica have offered reasonable definitions of the term "occupying." When they are applied to the facts of this case, both require coverage. Accordingly, we uphold the superior court's entry of summary judgment for the plaintiff.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.